**UNITED STATES of America,
Appellee,**

v.

**Robert WISEMAN, Defendant-Appellant.**

**UNITED STATES of America,
Appellee,**

v.

**Herman RICK, Defendant-Appellant.**

**Nos. 445, 469, Dockets 35286, 35636.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 8, 1971.

Decided June 30, 1971.

---

2. See North Carolina v. Pearce, 1969, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656.

Robert Ehrenbard, New York City, for defendant-appellant Robert Wiseman.

Harry Schein, New York City (Schein, Bressler & Brickel, New York City, of counsel), for defendant-appellant Herman Rick.

Richard A. Givens, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U.S.Atty., for S.D.N.Y., New York City, Robert P. Walton, David Paget and Ross Sandler, Asst. U. S. Attys., New York City, of counsel), for appellee.

Before LUMBARD, MOORE and SMITH, Circuit Judges.

MOORE, Circuit Judge:

Both defendants are appealing from judgments of conviction under 18 U.S.C. §§ 242 and 2. Defendant Wiseman was charged in separate counts with thirty-five violations of these statutes, and defendant Rick was charged with seven. The jury found Wiseman guilty on sixteen counts and Rick guilty on three. Wiseman was sentenced on June 18, 1969 to a one year suspended sentence. Rick was sentenced on February 25, 1970 also to a one year suspended sentence.

Defendants had been employed by Nathan Lindsay as professional process servers. They admit that they routinely signed blank forms entitled "affidavit of service" and that such affidavits were completed with false information stating that persons who were never served had

in fact been served. These affidavits were filed in the Clerk's Office and on the basis of such affidavits, default judgments were entered against the persons named as defendants in the suits to which the affidavits of service related. In some cases, such judgments served as a basis for income executions which were effected against such persons. A number of people testified that an income execution against them led them to discover that a judgment had been entered against them. Others indicated that their credit rating was adversely affected by the fact that such judgments had been entered.

Defendants did not contest this evidence but instead stated that they did not know or intend that their signatures on the blank forms entitled "affidavit of service" would be used except after they had given information indicating that service had actually been made on a certain individual. They stated that at no time were they aware of the fact that the signature in an affidavit must be sworn to, and thus, they never swore to the correctness of any of the blank "affidavits of service." Thus, these forms, although entitled "affidavit of service" did not constitute proper affidavits because they were unsworn.

To rebut the inference that the defendant Wiseman was unaware that his signature was being used fraudulently, the government cross-examined him as to whether he had previously been asked by Lindsay to appear in court, pretending to be a fictitious process server created by Lindsay. Wiseman admitted that such a scheme had been proposed except that he stated that he thought he was to go to court to say that "Lloyd Cahn" could not be present. The government then introduced testimony by Abraham Kalkin, an attorney, who testified that Wiseman had told him that Lindsay had asked him to pretend to be "Cahn." It is not contended that Wiseman consented to this scheme; he clearly did not.

## I.

### Under Color of Law

Defendant was convicted under 18 U.S.C. § 242 and § 2. Section 242 provides in part:

"Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States * * * [shall be guilty of a crime]."

The "under color of * * *" clause has a meaning identical with that given the term "state action." United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). Section 2(b) provides that:

"Whoever wilfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

The state action doctrine has often been invoked in the last several years but this is the first time this court has been called on to decide whether and to what extent this doctrine applies to "private" process servers, either directly under § 242 or as aiders and abetters under § 2(b).

There is no doubt that the Clerk of the New York City Civil Court, New York County, is an employee of an agency of a subdivision of New York State, and acts "under color of state law." Thus, as to the aiding and abetting charge, there is state action, even though defendants themselves are not state employees. United States v. Price, *supra*. Defendants argue that without the Clerk's knowing participation in this scheme, § 215 is inapplicable. This contention is refuted by the reasoning of United States v. Lester, 363 F.2d 68 (6th Cir. 1966), cert. denied, 385 U.S. 1002, 87 S.Ct. 705, 17 L.Ed.2d 542 (1967). Before 1951, § 2(b) read:

"Whoever wilfully causes an act to be done which if directly performed *by*

*him* would be an offense against the United States, is punishable as a principal." (Emphasis added.)

In 1951, this section was amended by adding "or another" after "by him" (see above). The phrase "or another" includes the Clerk of the Civil Court. Thus if defendants "wilfully caused" the Clerk to enter such judgments, defendants would be culpable to the same extent as the Clerk would be assuming the Clerk had the same knowledge as was possessed by defendants as to the falsity of the papers.

■ In addition, it is suggested that defendants engaged in State action directly. New York law provides that anyone who is over eighteen and not a party to the lawsuit may serve a summons.[1] Appellants were, therefore, permitted to serve summonses under this blanket authorization. The State did not pay them; their employer was hired by various attorneys for the purpose of effecting service of papers in connection with lawsuits. Thus, defendants were neither State employees nor employees of a person who was under contract with the State. See Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, 19 (1958); Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); Simkins v. Moses H. Cone

Memorial Hospital, 323 F.2d 959 (4th Cir. 1963), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964); Kerr v. Enoch Pratt Free Library, 149 F.2d 212 (4th Cir.), cert. denied, 326 U.S. 721, 66 S.Ct. 26, 90 L.Ed. 427 (1945). The blanket form of authorization given by the State to virtually all adult citizens to serve process[2] together with the apparent lack of any State supervision of process servers other than the statutory provisions relating to the proper method of service, leads us to conclude that there was neither State encouragement nor involvement in the practice of submitting false "affidavits." See Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); Robinson v. Florida, 378 U.S. 153, 84 S.Ct. 1693, 12 L.Ed.2d 771 (1964); Bell v. Maryland, 378 U.S. 226, 84 S.Ct. 1814, 12 L.Ed.2d 822 (1964); Lombard v. Louisiana, 373 U.S. 267, 83 S.Ct. 1122, 10 L.Ed.2d 338 (1963); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).[3]

■ The government also argues that defendants were engaged in "state action" under the "public function theory." The so-called "public function theory" consists of two related but distinct and narrowly defined doctrines. Powe v.

---

1. Rule 2103, New York C.P.L.R. (McKinney 1963) provides in part:
   "(a) Who can serve. Except where otherwise prescribed by law or order of court, papers may be served by any person not a party of the age of eighteen years or over."

2. The fact of being licensed or designated by the state is relatively insignificant in establishing state action, although it is somewhat relevant both in the determination of whether an individual is acting as a state employee, or as part of a state agency, or with state "encouragement" and in the determination of whether the individual is engaged in a "public function" (see *infra*). For example, in Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), there was no state designation of the "Jaybird Party" as an official organ, or political vehicle. Yet there it was found that there was state action under the "public function" rationale. On the other hand, in Lefcourt

v. Legal Aid Society, 445 F.2d 1150 (2d Cir., 1971), it was found that there was no state action despite the fact that the Legal Aid Society had been designated by the city to provide legal services to certain indigent persons accused of criminal activity. Thus, we find defendants' extended discussion of whether the Rule quoted in note 1 constitutes an "authorization" for defendants to serve process to be of little importance.

3. We note here that unlike the cases cited, this case does not involve racial discrimination. This court has recognized that a court is much more likely to find state involvement where racial discrimination is involved, since in that context state inaction or neutrality has often been found to constitute state action. Lefcourt v. Legal Aid, *supra* note 2; Powe v. Miles, 407 F.2d 73, 82, 85 (2d Cir. 1968); Wolin v. Port Authority, 392 F.2d 83, 89 (2d Cir.), cert. denied, 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275 (1969).

Miles, 407 F.2d 73 (2d Cir. 1968). One branch of the "public function theory" relates to areas which are open to the general public but which are privately owned. Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968). Since no public area is involved in this case, this branch of the "public function theory" is inapplicable. The other branch of the "public function theory" is based on such cases as Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) and Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944), cf. Evans v. Newton, *supra*, 382 U.S. at 301. [86 S.Ct. 486.] We believe this case to be among the narrow class of cases where state action can be found on the basis of this second branch of the public function theory. Unlike most functions involved in the conduct of a lawsuit by private parties, the service of summons is essentially and traditionally a public function. As one New York court suggested: "[t]he service of process is an act of public power." In re Bonesteel's Will, 16 [A.D.]2d 324, 326, 228 N.Y.S.2d 301, 304 (3d Dept. 1962). That the defendants sought to take advantage of their authority to perform this "act of public power" by signing blank affidavits of service without actually effecting service does not remove their activities from the "public" classification. Indeed, the signing of an "affidavit of service" is as much a part of the exercising of the right to effect service of summons as is the act of service itself. Similarly, that defendants signed "affidavits" in blank, rather than waiting until they were filled in and then swearing to the accuracy

of the information contained therein as required by State law does not remove or lessen the "public" nature of the act. To violate § 242, an act need not have been made in compliance with law but merely "under color of law." Defendants admitted that they expected the forms they signed to be later filled in, notarized and filed with the Civil Court. That the mode of execution was improper only aggravated the crime. See Griffin v. Maryland, 378 U.S. 130, 135, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); United States v. Price, *supra*.[4]

Indeed, the acts of defendants here, as in Williams v. United States, 341 U.S. 97, 101, 71 S.Ct. 576, 579, 95 L.Ed. 774 (1951) were designed to circumvent "the right of the accused [defendant] to be tried [heard] by a legally constituted court." *Williams* involved a private guard who was given certain authority by the City of Miami, Florida similar to that given a public police officer. In *Williams* the defendants deprived their victims of their day in Court by inflicting summary punishment. Defendants here, while using less violent methods, to a greater extent than in *Williams*, sought to take advantage of their public authority.

Furthermore, it is significant that this case directly involves defendants' mode of conducting this public function, and does not involve a collateral aspect of the process serving business.

Accordingly, we conclude that the activity involved in this case is activity which even when performed by a private party constitutes a "public function," and constitutes State action under that theory.

4. Since the indictment refers to "affidavits," defendants may in effect be claiming that since in fact these papers entitled "affidavits" were not affidavits, there was a variance between the facts and the indictment. By signing their names on papers entitled "affidavits of service" for this purpose, defendants are estopped from claiming that the papers were not in fact affidavits. Even if this were not the case, reversal on this

ground would not be justifiable because [there] was no surprise, claim of surprise, or request for adjournment. United States v. Armantrout, 411 F.2d 60 (2d Cir. 1969); United States v. Edwards, 366 F.2d 853, 872 (2d Cir. 1966), cert. denied, Jakob v. United States, 386 U.S. 908, 87 S.Ct. 852, 17 L.Ed.2d 782 (1967); United States v. Glaze, 313 F.2d 757 (2d Cir. 1963).

## II.

### *Eisen* v. *Eastman*

■ Our decision in Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969) has provided us with useful guidelines in our exercise of jurisdiction in cases involving 42 U.S.C. § 1983, the civil counterpart of 18 U.S.C. § 242. That decision, based heavily on the reasoning of Hague v. C.I.O., 307 U.S. 496, 531, 59 S. Ct. 954, 83 L.Ed. 1423 (Stone, J., concurring) (1939), reconciled the apparent incongruity between 28 U.S.C. § 1343(3), which provides for jurisdiction in civil cases without regard to a jurisdictional minimum amount, and 28 U.S.C. § 1331, which has a $10,000 jurisdictional minimum. In *Eisen,* we concluded that § 1343(3) applies only when "personal liberty" rather than a mere property right is involved. In reaching this conclusion, we were able to conclude that §§ 1331 and 1343(3) did more than merely duplicate each other, thus giving substance to the $10,000 jurisdictional minimum of § 1331. Defendants suggest that the *Eisen* rationale should also be applied in the application of 18 U.S.C. § 242. That contention is clearly unwarranted because there are no potentially duplicative jurisdictional bases as to criminal prosecutions. Jurisdiction for this case rests on 18 U.S.C. § 3231 which provides:

> "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the United States."

This broad grant of jurisdiction in criminal matters contrasts sharply with the limitations imposed by Congress in civil matters.

## III.

### *Nature of the Offense*

■ Defendants were convicted for intentionally depriving persons of their right to due process by causing judgments to be entered without affording proper notice as required by the Fifth and Fourteenth Amendments to the United States Constitution. Their claim that the elements of this offense were not proven by sufficient evidence is without merit.

There is no doubt but that the victims of defendants' acts were deprived of their right to notice which is guaranteed to them by the Constitution. Defendants have a right to assume that State requirements relating to service will be followed. Where no attempt whatever is made to comply with such requirements, it cannot be said that minimum constitutional requirements as to due process have been met. Wuchter v. Pizzuti, 276 U.S. 13, 24, 48 S.Ct. 259, 72 L.Ed. 446 (1928). Furthermore, persons named as defendants have a federal right, independent of State law, to be accorded proper notice before the entry of judgments against them, since after judgment the burden is on defendant to seek such further relief as may be available. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed. 2d 62 (1965).[5] This is true even though after entry of judgment, the persons against whom such judgments are entered may seek to appeal or vacate the judgment (Sniadach v. Family Finance, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969)), regardless of what actual damage was suffered by such persons as a result of the entry of such judgment.[6]

Defendants suggest that the proof as to the intentional nature of their conduct was insufficient to warrant presenting the case to the jury. Yet they admitted that they signed the "affidavits" in blank. Even if they did not know that they were required to swear

---

5. No claim is or could be made here that there exists any extraordinary reason for summary adjudication which would justify dispensing with the vital due process requirement of notice to those named as defendants in civil actions.

6. The government, of course, supplied a wealth of data as to how various persons fraudulently named in the "affidavits of service" involved here were damaged either through failure to obtain credit or through wage garnishment.

the truth of the information contained therein in order for the paper to constitute an "affidavit" and in order to file same, the jury was justified in believing that defendants were aware that it was illegal to sign the affidavits in blank, in the light of defendants' experience in the process server business. Furthermore, the jury was entitled to conclude that because of this experience, and because they signed numerous such blank affidavits they had knowledge that these affidavits which they signed in blank were being completed fraudulently and thereafter filed with the Civil Court Clerk, thus violating various persons' rights under the Due Process Clause of the Constitution.

### IV.

*Conclusion*

A review of the facts of this case shows that defendants, acting under color of State law, deliberately sought to deprive numerous persons of their most basic due process right: the right to notice of a judicial proceeding against them.

The judgments of conviction are affirmed.