Paulina PEREZ et al., Plaintiffs-Appellants,

v.

Jule M. SUGARMAN et al., Defendants,
and
New York Foundling Hospital and St. Joseph's Home of Peekskill, Defendants-Appellees.

No. 202, Docket 73–1790.

United States Court of Appeals, Second Circuit.

Argued Dec. 3, 1974.

Decided June 7, 1974.

Lisa H. Blitman, George C. Stewart, Napoleon B. Williams, New York City, for plaintiffs-appellants.

Frederick J. Magovern, Bodell, Gross & Magovern, New York City, for defendants-appellees.

Before WATERMAN and FEINBERG, Circuit Judges, and GURFEIN, District Judge.*

WATERMAN, Circuit Judge:

This is a civil rights suit brought under 42 U.S.C. § 1983 against four individual defendants, all of whom

* Of the Southern District of New York, sitting by designation.

are employed by the municipality of New York City, and two private child-caring institutions, New York Foundling Hospital and St. Joseph's Home for Children. The complaint alleges deprivations of the constitutional rights to due process and equal protection of the laws as guaranteed by the Fourteenth Amendment. In the district court below the two institutional defendants moved to dismiss the complaint as against them on the grounds, inter alia, that the court lacked subject matter jurisdiction and that the complaint failed to state a claim upon which relief could be granted. The district court, Metzner, J., apparently assuming arguendo that subject matter jurisdiction existed, first dismissed the complaint, but only to the extent that it was based on alleged denials of equal protection, against the institutional defendants upon the ground that it failed to state a claim upon which relief could be granted. Judge Metzner then dismissed the entire complaint against the private institutions for lack of subject matter jurisdiction. We do not disturb the district court's dismissal of the complaint insofar as the complaint alleges equal protection violations.[1] We hold, however, that the lower court had subject matter jurisdiction and, accordingly, we reverse the district court's dismissal for lack of subject matter jurisdiction and order the complaint reinstated against the defendants-appellees herein except to the extent that it rests on alleged denials of equal protection.

The gravamen of the complaint is an alleged unlawful and unconstitutional detention of appellant[2] Perez's children. Although the allegations are unclear at

some points in describing what specific acts were performed by which particular defendants, the complaint does disclose the general sequence of events concerning which the plaintiff complains. In late December 1969, plaintiff-appellant suddenly became ill and was transported to a hospital by ambulance. During the period of her hospitalization appellant's children came into the custody of New York City child welfare officials. The children were subsequently placed by the city with the two private institutional defendants herein. Following her release from the hospital appellant began to request the return of her children, but the defendants refused to surrender custody.

The complaint states that it was not until March of 1972 that the defendant city officials made any attempt to obtain a court order to attest to the validity of their detention of appellant's children. Even then, the neglect proceeding filed by the city in the Family Court was apparently instituted only in response to a petition filed by appellant in New York Supreme Court for a writ of habeas corpus, in which she sought return of her children. In short, appellant's complaint alleges that these children were removed by the city and then detained by the defendant institutions for well over two years without the parent's consent or without benefit of either a court order protecting the detention or benefit of a hearing of any kind whatsoever. The complaint also alleges that the institutional defendants were cognizant of the fact that there had been no hearing and that there had been neither a court order authorizing institutional custody nor consent of the parent agreeing to it.[3]

1. On this point, we adopt the reasoning of the court below.

2. Technically, appellant Perez's infant children are also parties to this action. For the sake of simplicity, we shall dispense with referring to the children as "appellants."

3. Assuming the court to have subject-matter jurisdiction over the claims alleged against the institutions appellant and appellees have devoted some attention to the question of

whether the complaint states a cause of action upon which relief can be granted to appellant. As we have indicated, a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, in addition to the motion under Rule 12(b)(1), was before Judge Metzner. Except to the extent of dismissing the equal protection portion of the claim, however, the district court did not decide the 12(b)(6) motion. We therefore are not required in advance of a ruling below to deter-

764

42 U.S.C. § 1983, the provision of law upon which this lawsuit is predicated, is apposite only when the person against whom the provision is invoked has acted "under color of" law. It is well-established that this jurisdictional prerequisite is congruent to the "state action" concept. United States v. Price, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); United States v. Wiseman, 445 F.2d 792, 794 (2 Cir.), cert. denied, 404 U.S. 967, 92 S.Ct. 346, 30 L.Ed.2d 287 (1971).[4] In this case the appellee institutions, concededly private in nature, contend that their actions in detaining the appellant's children do not constitute "state action" but rather the action of private parties wholly without the purview of Section 1983. For the reasons developed below, we disagree, and we conclude that under the circumstances here the actions of the institutional defendants did constitute "state action" and therefore the district court had subject matter jurisdiction.

As a general rule, the proscriptions of the Fourteenth Amendment do not extend to private conduct. But "[c]onduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." Evans v. Newton, 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1966). While the numerous cases which have grappled with the concept of "state action" have reached widely disparate results, this apparent disarray is to be expected since "[o]nly by sifting facts and weighing circumstances [of each case] can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961); accord, Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 172, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Evans v. Newton, 382 U.S. 296, 299–300, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); Male v. Crossroads Associates, 469 F.2d 616, 620 (2 Cir. 1972). When we "sift the facts" and "weigh the circumstances" before us here, we conclude that the acts of the private institutions of which appellant complains were "under color of" state law.

mine whether the due process portions of the complaint state a cause of action upon which relief can be granted. However, we observe in this connection that the allegations of the complaint are far from frivolous.

These children were placed in defendant institutions in December of 1969. At that time § 398, subd. 2(b) of the New York Social Services Law, McKinney's Consol.Laws, c. 55 declared that the power and the duty of a social welfare officer was to "[r]eceive and care for any child alleged to be neglected or abandoned who is temporarily placed in his care by the family court pending adjudication by such court of the alleged neglect or abandonment. . . ." This provision seems to imply that there was no authority at that time to receive and care for appellant's children without an order, or at least a pending proceeding to obtain an order, of the family court.

On June 1, 1970, when the appellant's children were still in the custody of the institutions, amendments to § 398 became effective. The law then read and now provides that "[a] social services official shall have the same authority as a peace officer to remove a child from his home without an order of the family court and without the consent of the parent . . . if . . . continuing in the home presents an imminent danger to the child's life or health. When a child is removed from his home pursuant to the provisions of this subdivision, the social services official shall *promptly* inform the parent . . . and the family court of his action." (Emphasis supplied). NYSSL § 398, subd. 9. Although this amended section might authorize *removal* from the home without a court order, it would not seem to justify a detention in excess of two years without a court order or a hearing. Moreover, as we have stated, the initial removal in this case would appear to have been governed by the provisions of § 398 existing on the date of that removal. Thus, it is possible that both the initial removal and the subsequent detention involve violations of law.

4. "'Under color' of law means the same thing in [18 U.S.C.] § 242 that it does in the civil counterpart of § 242, 42 U.S.C. § 1983." United States v. Price, *supra*, 383 U.S. at 794 n. 7, 86 S.Ct. at 1157.

In certain instances the actions of private entities may be considered to be infused with "state action" if those private parties are performing a function public or governmental in nature and which would have to be performed by the Government but for the activities of the private parties. See Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944); Nixon v. Condon, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932); United States v. Wiseman, *supra*. For example, in United States v. Wiseman, *supra*, we held that the acts of private process servers there constituted "state action" despite the fact that the servers were not technically state employees. The rationale of that decision was that the function which these people performed was one "essentially and traditionally" public. Similarly, in Evans v. Newton, *supra*, the operation of a municipal park was considered essentially public in nature, irrespective of whether the parties supervising the operations of the park were private persons or public officials. In accepting and retaining custody of children alleged to have been "neglected" or "abandoned," child-caring institutions of the type we have in this case perform a "public function." Any doubt that this function is a public one is dispelled by even a cursory reading of Section 395 of the New York Social Services Law (McKinney Supp.1972) (NYSSL), which declares that government officials "shall be responsible for the welfare of children who are in need

of public assistance and care, support and protection . . . ." In fulfilling this responsibility, however, the State may provide direct assistance or, should it so choose, the State may act "*through an authorized agency.*" Id. Both institutional defendants herein lie within the statutory definition of "authorized agency." See NYSSL § 371(10). Thus, the statutory scheme expressly contemplates that in performing this public function of caring for children the State may utilize private entities of the sort we have here.[5] This is precisely what the city welfare officials did when they transferred appellant's children to the care of the institutional defendants. But, as the statute makes incontrovertibly clear, it is the State which in effect is providing the care *through* the private institutions. This exercise of the administrative placing prerogative does not affect in any way the State's ultimate responsibility for the well-being of the children, and, consequently, the public nature of the function being performed.

We need not rely solely on the "public function" theory, however, to support our conclusion that "state action" exists. The comprehensive statutory regulatory scheme of the New York Social Services Law is persuasive, perhaps compelling, evidence of the degree to which the State has insinuated itself into the actions of the private defendants here. As we have already indicated, the statute makes the State bear responsibility for the care of all children in need of assistance. NYSSL § 395. The pervasiveness of the state control over cooperat-

5. In a footnote in their brief in this court, appellees direct our attention to the point in appellant's complaint where the appellees are described as "agents" of New York City. From this characterization appellees reach the novel conclusion that they must be considered as organs of a municipality. We are then referred to cases which have held municipalities immune from suit under 42 U.S. C. § 1983. We find this line of reasoning superficial. Acceptance of such reasoning would foreclose suit against any party who could be regarded as an agent of a municipality. Yet, § 1983 cases invariably concern

individuals or institutions who are alleged to have acted in just such an agency capacity for the State. Appellees next suggest that the appellee institutions may not be "persons" within the § 1983 definition of that term. But this contention must also be rejected, for § 1983 *has* served as a vehicle for bringing suit against corporate entities. See, e. g., Palmer v. Columbia Gas of Ohio, Inc., 479 F.2d 152 (6 Cir. 1973); Bronson v. Consolidated Edison Co., 350 F.Supp. 443 (SDNY 1972); Stanford v. Gas Service Co., 346 F.Supp. 717 (D.Kan.1972).

ing private institutions is disclosed by further inquiry. Section 371(10) requires that any child-caring institution desiring to qualify as an "authorized agency" must be incorporated in New York and must consent to be approved, visited, inspected, and supervised by the State "as to any and all acts in relation to the welfare of [the] children" it receives from the State. Public Welfare officials have the power to place children only in those institutions which are "visited, inspected and supervised by the board and conducted in conformity with the rules of such board." Id. § 398, subd. 6(g). The State may visit any such institution, id. § 386, and the law recommends that this be done at least four times a year. Such institutions must keep detailed records which can be inspected by the State and must make reports to the State on special forms supplied by the State. Id. § 372. Additionally, the State must supervise children of whom it has taken custody until they reach the age of twenty-one. Id. § 398, subd. 6(h). Most importantly, the absolute dominion of the State over the private institutions is illustrated by the State's ability to remove the children from the institution at any time. Id. § 400. This comprehensive statute thus establishes that while the State may have yielded physical possession of the children, at no time did it, or indeed could it, relinquish effective legal control over them. This retention of control does not, however, undercut the importance of the institutions in the overall scheme to care for needy children. As noted, the New York Social Services Law expressly contemplates the use of private facilities to accomplish the public purpose here. Indeed, these private entities are an integral part of the public operation of providing assistance. And, as the Supreme Court has pointed out in Burton v. Wilmington Parking Authority, *supra*, the dependence of the State on private parties is a factor which tends to establish the intimacy requisite to a finding of "state action."

We point out that appellant does not claim that the regulatory system to which these private institutions are subjected when they accept children from the State compels a holding that *every* action in which such an institution engages is "state action." Rather, appellant argues only that the particular custodial power exercised here in detaining appellant's children constitutes "state action" because there is a nexus between the public function being performed and the specific acts which are alleged to be objectionable. Just as in United States v. Wiseman, *supra*, 445 F.2d at 796, "this case directly involves defendants' mode of conducting the public function and does not involve a collateral aspect of" the business of operating an institution which cares for children. The existence of this nexus has made the courts more receptive to a finding of "state action." See, e. g., id. at 796.[6]

Appellant maintains that the district court prejudicially erred in failing to grant her request that the defendant institutions be directed to answer interrogatories which sought to obtain information about any public funding the institutions receive. Appellant desired this information for the purpose of proving her allegations of "state action," and, in view of the holding we reach here, it is obviously no longer necessary for us to consider this issue.

Reversed and remanded.

---

6. In situations where this connection was absent, however, a much more substantial showing of state implication into the private action has been required. See, e. g., Lefcourt v. Legal Aid Society, 445 F.2d 1150 (2 Cir. 1971).

Appellees place particular emphasis on this case. As mentioned, the lack of a nexus is significant, and therefore the holding in *Lefcourt* is inapplicable to the case before us. Furthermore, *Lefcourt* is distinguishable because it involved a function which "far from being the function of an agency which 'traditionally serves the community' is normally performed for and by private persons." Id. at 1156. Also, the city there retained "few controls" over the private party alleged to have engaged in "state action."