**Ruby McKINNEY, Mother and Best Friend of Michael McKinney, Plaintiff,**

v.

**WEST END VOLUNTARY AMBULANCE ASSOCIATION, Defendant.**

**Civ. A. No. 92–0016.**

United States District Court, E.D. Pennsylvania.

Nov. 13, 1992.

---

Laurence Adams, Lancaster, PA, for plaintiff.

J. Michael Flanagan, Lancaster, PA, for defendant.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

## I. INTRODUCTION

This 42 U.S.C. § 1983 action with pendant state claims in tort is brought by the plaintiff, Ruby McKinney as the mother and best friend of Michael McKinney, against the defendant, West End Voluntary Ambulance Association ("Ambulance Association").[1] The plaintiff's four-count Complaint is based upon the Ambulance Association's alleged refusal to render medical assistance to Michael McKinney, who was the victim of a shooting, on the basis of race. Before the court is the

Ambulance Association's Motion for Summary Judgment. For the reasons stated below, we grant the Ambulance Association's Motion as to the section 1983 claim in Count III and dismiss the state law claims set forth in Counts I, II, and IV without prejudice.

## II. FACTUAL BACKGROUND

The Ambulance Association is a private, non-profit organization that provides emergency medical care and transportation of patients in Lancaster County, Pennsylvania. The Board and Staff Members of the Ambulance Association are neither government officials, nor appointed by government officials. Its membership consists of volunteers. The Ambulance Association is primarily funded through donations and fees collected for its services, which include fees paid by Medicaid and Medicare. However, none of its staff are paid directly by the government. The Ambulance Association owns and paid for both the building from which it operates and all of the equipment utilized to provide emergency medical service.[2]

The Commonwealth of Pennsylvania extensively regulates the Ambulance Association and the emergency medical technicians ("EMS personnel") that crew its ambulances. The Emergency Medical Services Act ("Act") was passed to establish and maintain an effective and efficient emergency medical services system, accessible on a uniform basis to all Pennsylvania residents and to visitors of the Commonwealth. 35 Pa.Stat.Ann. § 6922(b)(1) (Supp.1992). Under the Act, the Department of Health is charged with the responsibility to plan, guide, and coordinate programs to ensure that the emergency medical service system provides essential emergency service. 35 Pa.Stat.Ann. §§ 6924, 6925 (Supp.1992). The Act provides for the preparation of a comprehensive emergency medical services development plan, in which objectives, methods, and schedules for achieving such objectives are set forth. 35 Pa.Stat.Ann: § 6929 (Supp.1992). The De-

1. The court notes jurisdiction under 28 U.S.C. §§ 1331, 1343, 1367.

2. The defendant, Ambulance Association, established the factual allegations in this paragraph through the submission of the Deposition of the

Executive Director of the West End Voluntary Ambulance Association, Donald Erdman. The plaintiff has submitted no evidence to refute these factual assertions.

partment of Health also has the responsibility to establish educational standards and approve basic training programs for EMS personnel, to certify EMS personnel meeting the requirements of the Act, and to assure the availability of continued training. 35 Pa.Stat. Ann. §§ 6931, 6932(f) (Supp.1992). Additionally, the Act and regulations promulgated under the authority of the Act establish licensure standards for an ambulance service, such as how an ambulance is to be equipped and minimum staffing requirements. 35 Pa. Stat.Ann. § 6932 (Supp.1992); 28 Pa.Code § 1005.10 (1992). An inspection of an ambulance service's vehicles, equipment, and personnel qualifications is to be conducted by the Department of Health at least once every three years. 35 Pa.Stat.Ann. § 6932(k) (Supp.1992). Lastly, the Department of Health may suspend, revoke, or refuse to issue an ambulance service license and certification of EMS personnel on many grounds, but of particular consequence to this case, is the ground for refusing to render emergency medical service "because of a patient's race, sex, creed, national origin, sexual preference, age, handicap, medical problem or financial inability to pay." 28 Pa.Code §§ 1003.-27(a)(10), 1005.12(a)(15) (1992).

The Ambulance Association also has a relationship with the government through the 911 system. In Lancaster County, emergency services are coordinated through the 911 system, which is a county-wide emergency dispatch system operated by the Lancaster County government. Other than receiving emergency calls through the 911 system, the Ambulance Association has no connection with the County.

The dispute is this case arises in the aftermath of the shooting of Michael McKinney on July 20, 1991 in Lancaster, Pennsylvania. The plaintiff alleges that McKinney's companion, Anthony Kelley, flagged down the defendant's ambulance while McKinney and Kelley were en route to the Lancaster Police Station. The ambulance was fully staffed with three certified emergency medical technicians of the Ambulance Association and properly equipped in accordance with the regulations. Thus, the plaintiff contends that the Ambulance Association had the ability to provide emergency care, or at least contact the proper authorities. However, after Kelley informed the ambulance crew that his friend had been shot, he was allegedly told that the ambulance was off duty and that he should call 911, after which the ambulance drove away. McKinney and Kelley then proceeded to walk the remaining two blocks to the police station. The plaintiff contends that when the young men stopped the ambulance the crew was aware that McKinney was seriously wounded, but refused to render assistance because McKinney and Kelley were black.

## III. STANDARD OF REVIEW

■ Summary Judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of identifying for the court those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). This burden may be discharged by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. at 2554. Where the non-moving party opposing summary judgment has the burden of proof at trial on an issue for which summary judgment is sought, such a party must then make a showing sufficient to establish the existence of the essential elements of her case in order to survive a summary judgment motion. *Id.* at 322–23, 106 S.Ct. at 2552. In making such a determination, the appropriate inquiry is whether there is a need for a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Where the full record, taken together could not lead a rational trier of fact to find for the non-moving party, no genuine issue exists for trial." *United States v. One 107.9 Acre Parcel of Land*, 898 F.2d 396, 398 (3d Cir.1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

In applying the standard for summary judgment, our analysis is guided by the following well established rules. All inferences must be drawn in favor of the non-moving party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Continental Ins. Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982), all doubts must be resolved against the moving party, *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985) (citations omitted), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985), and all allegations of the non-moving party that conflict with those of the movant must be taken as true. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. However, "the mere existence of some allegedly factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–48, 106 S.Ct. at 2510. If the evidence is merely "colorable" or "not significantly probative", summary judgment may be granted. *Id.* at 249, 106 S.Ct. at 2511. A party resisting a summary judgment motion "cannot ... rely merely upon bare assertions, conclusory allegations or suspicions." *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981); Fed.R.Civ.P. 56(e). A " 'response must set forth *specific facts* showing that there is a genuine issue for trial.' " *Gans*, 762 F.2d at 341 (quoting Fed.R.Civ.P. 56(e)) (emphasis added).

## IV. DISCUSSION

In Count III of the Complaint, the plaintiff alleges that the defendant, Ambulance Association, acting under color of state law, deprived Michael McKinney of his Fourteenth Amendment right to equal protection of the laws in violation of 42 U.S.C. § 1983. The Ambulance Association has moved for summary judgment on the ground that its action in failing to render assistance to McKinney was not under color of state law within the meaning of section 1983.[3]

Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory...."[4] The central issue in determining whether a person has acted "under color of state law" and, thus, is subject to suit under section 1983 is whether the alleged infringement of federal rights is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). The "under color of state law" requirement of section 1983 is treated the same as the "state action" requirement of the Fourteenth Amendment. *Id.* at 928, 102 S.Ct. at 2749. The purpose of this requirement is "to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). Since the time of the *Civil Rights Cases*, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), the "state action requirement" has reflected a desire to preserve "individual freedom by limiting the reach of federal law and federal judicial power" and avoid "imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." *Lugar*, 457 U.S. at 936, 102 S.Ct. at 2753. The importance of this assurance is evident when, as here, the plaintiff seeks recovery based on the actions

---

3. As an additional ground for summary judgment on Count III, the Ambulance Association contends that there is no evidence of any custom or policy to discriminate against blacks. See *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In light of our decision that the Ambulance Association was not acting under color of state law, we do not reach this issue.

4. Title 42 U.S.C. § 1983 states, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United Stated or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

of a private party.[5]

The Supreme Court has not articulated a single definitive standard for determining the presence or absence of state action. Rather, the Court has formulated a number of approaches whose application depends upon the circumstances of the individual case. The only approaches arguably relevant to this case are the "public function" test of *Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966), *Terry v. Adams*, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), and *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); the "symbiotic relationship" approach of *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); and the "close nexus" test of *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).[6]

### A. PUBLIC FUNCTION

■ The plaintiff contends that the Ambulance Association is a state actor on the ground that providing ambulance service is an exclusive public function. The plaintiff argues that ambulance service is a public function due to: (1) extensive governmental regulation and (2) the government's obligation to perform this service, based upon the public's vital interest in ambulance service, in the event volunteer ambulance organizations were to cease operating. The plaintiff relies upon *Perez v. Sugarman*, 499 F.2d 761 (2d Cir.1974) for this proposition. In *Perez*, the court held that in accepting and retaining custody of abandoned or neglected children, private institutions performed a public function. *Id.* at 765. The court ruled that state action is present if a private party is "performing a function public or governmental in nature and which would have to be performed by the Government but for the activities of the private part[y]." *Id.* (citations omitted). In explaining this standard, the court stated that the function that a private entity performs must be one " 'essentially and traditionally public.' " *Id.*

In the instant case, the plaintiff has misconstrued the application of the standard set forth in *Perez*. The court relied upon neither the extensive governmental regulation of the private institution, nor the essential public service being performed, to support its holding. In *Perez*, the State of New York had delegated its statutory responsibility to care for children in need of public assistance to a private institution. *Id.* Such a delegation did not affect "the State's ultimate responsibility for the well-being of children, and, consequently, the public nature of the function being performed." *Id.* Here, unlike the case in *Perez*, the Emergency Medical Services Act, 35 Pa.Stat.Ann. §§ 6921–6938 (Supp.1992) and the regulations promulgated under the authority of the Act, which the plaintiff relies upon, do not impose an obligation on the Commonwealth of Pennsylvania to provide ambulance service.

■ Moreover, the Supreme Court has rejected both of the plaintiff's arguments. The plaintiff's first argument, that ambulance service is a public function because of extensive governmental regulation, was implicitly rejected in *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). In discussing the application of the public function test to the performance of nursing home services, the Supreme Court noted that although federal and state law regulated the State of New York's funding of nursing home services, none of the provisions required the State to provide such services itself. *Id.* at 1011, 102 S.Ct. at 2789. Thus, such provisions were inadequate to support a finding

---

**5.** Private conduct, however discriminatory, wrongful, or cowardice does not form a basis for relief under 42 U.S.C. § 1983. *See, e.g., Ouzts v. Maryland Nat'l Ins. Co.*, 505 F.2d 547, 550 (9th Cir.1974), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1681, 44 L.Ed.2d 103 (1975); *Brownley v. Gettysburg College*, 338 F.Supp. 725, 726 (M.D.Pa. 1972) (citations omitted).

**6.** The other approach applied by the Supreme Court is the "state compulsion" or "joint participation" test of *Lugar v. Edmondson Oil Co.*, 457

U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), where private parties are jointly engaged with state officials in the prohibited action. Here, there is no evidence that even remotely suggests state officials or their agents jointly engaged in the Ambulance Association's alleged discriminatory conduct. Accordingly, this approach is not applicable to our determination.

that nursing home services are a public function. Additionally, the Supreme Court has rejected the plaintiff's second argument that a private entity's performance of an essential public service converts its action into a public function. See *Jackson*, 419 U.S. at 352–54, 95 S.Ct. at 454–55 (rejecting broad principle under public function test that all businesses affected with the public interest are state actors). Also, the relevant inquiry under this standard is not just whether the private entity is serving a public function, but whether such a function is " 'traditionally the *exclusive* prerogative of the State.'" *Rendell–Baker v. Kohn*, 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418 (1982) (citations omitted). Therefore, even if the plaintiff's characterization of the Commonwealth of Pennsylvania's duties was correct, the plaintiff has failed to establish that ambulance service is traditionally the exclusive prerogative of the Commonwealth. See *Krieger v. Bethesda–Chevy Chase Rescue Squad*, 599 F.Supp. 770, 773 (D.Md.1984) (rescue or ambulance service is not a public function), *aff'd without opinion*, 792 F.2d 139 (4th Cir.1986); *Eggleston v. Prince Edward Volunteer Rescue Squad, Inc.*, 569 F.Supp. 1344, 1350–51 (E.D.Va.1983) (Emergency transportation service is more akin to a private function and is not a function that is traditionally the exclusive prerogative of the government.), *aff'd without opinion*, 742 F.2d 1448 (4th Cir.1984); *cf. Community Medical Center v. Emergency Medical Services, Inc.*, 712 F.2d 878, 882 (3d Cir.1983) (coordinating medical services under the predecessor to the Pennsylvania Emergency Medical Services Act is not a public function that is traditionally the exclusive prerogative of the Commonwealth of Pennsylvania); *Hodge v. Paoli Memorial Hospital*, 576 F.2d 563, 564 (3d Cir.1978) (The majority of circuits have held that the receipt of government funding and the usual hospital licensing provisions do not constitute state action.) Accordingly, the Ambulance Association is not a state actor under the public function test.

## B. SYMBIOTIC RELATIONSHIP

 The plaintiff next makes a vague and general contention that the extensive governmental regulation of the Ambulance Association under the Emergency Medical Services Act creates a symbiotic relationship between the Commonwealth of Pennsylvania and the Ambulance Association. The symbiotic relationship test analyzes the relationship between the state and the private party. The action of the private party will be considered that of the state if the state has "so far insinuated itself into a position of interdependence with [the acting party] that it must be recognized as a joint participant in the challenged activity...." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961). In *Burton*, the Supreme Court found that a restaurant located within a public parking garage that practiced racial discrimination, to be state action because the State had many obligations and responsibilities regarding the operation of the restaurant; mutual benefits were conferred; and the restaurant operated physically and financially "as an integral part of a public building devoted to a public parking service." *Id.* at 724, 81 S.Ct. at 861.

The facts in the instant case fall well short of establishing a *Burton* symbiotic relationship. The Ambulance Association is a private, non-profit organization that provides emergency medical care and transportation of patients in Lancaster County, Pennsylvania. The Board and Staff Members of the Ambulance Association are neither government officials, nor appointed by government officials. Its membership consists of volunteers. The Ambulance Association owns and paid for both the building from which it operates and all of the equipment utilized to provide emergency medical service. Donations and fees constitute its primary source of funding.

The Ambulance Association is extensively regulated and receives financial support from the government through service fees its collects from Medicaid and Medicare. But this was likewise true of the nursing homes in *Blum v. Yaretsky*, 457 U.S. 991, 1011, 102 S.Ct. 2777, 2789, 73 L.Ed.2d 534 (1982), where the Supreme Court flatly rejected the argument that state subsidization of the operating and capital costs of the nursing homes, payment of the medical expenses of more than 90% of the patients, and the li-

censing of such facilities created a symbiotic relationship between the State and the nursing homes. *See also Community Medical Center,* 712 F.2d at 881 (Financial support and regulatory framework under the predecessor to the Pennsylvania Emergency Medical Services Act did not create a symbiotic relationship between the Commonwealth of Pennsylvania and an organization set up to coordinate health care services.) Additionally, the Ambulance Association has a relationship with the government through the 911 system. The Ambulance Association receives emergency calls through the 911 system, which is a county-wide emergency dispatch system operated by the Lancaster County government. However, receiving emergency calls through a government-operated system is no more persuasive than the fact of regulation or funding in demonstrating that the government was responsible for the Ambulance Association's alleged discriminatory conduct. Accordingly, the relationship between the Ambulance Association and the government is insufficient to establish state action under the symbiotic relationship test.

## C. CLOSE NEXUS

■■■ Finally, the plaintiff makes reference to the applicability of the close nexus test. Under the "nexus" test, a court is to determine "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); *Boyle v. Governor's Veterans Outreach & Assistance Center,* 925 F.2d 71, 76 (3d Cir.1991). Ordinarily, the State can be held responsible for a private decision:

> only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.

*Blum,* 457 U.S. at 1004, 102 S.Ct. at 2786 (citations omitted). Thus, it is not the mere existence of a state statute or regulation, no matter how extensive, that creates a nexus between the governmental action and the challenged activity. Instead, it is where a state statute encourages or coerces a private party to act in a manner that deprives the plaintiff of a constitutional right that state action occurs.

Where a private party, of its own accord, acts in a discriminatory manner, no nexus exists. For example, in *Moose Lodge No. 107 v. Irvis,* the Supreme Court held that racial discrimination by a private club did not amount to state action despite Pennsylvania statutes and regulations governing the sale of liquor because such statutes and regulations did not overtly or covertly encourage discrimination. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 173, 92 S.Ct. 1965, 1972, 32 L.Ed.2d 627 (1972). Here, as in *Moose Lodge,* the Pennsylvania Emergency Medical Services Act and the regulations cited by the plaintiff do not encourage, approve, authorize, or compel the Ambulance Association's alleged discrimination. To the contrary, the Department of Health may suspend, revoke, or refuse to issue an ambulance service license and certification of EMS personnel for refusing to render emergency medical service "because of a patient's race, sex, creed, national origin, sexual preference, age, handicap, medical problem or financial inability to pay." 28 Pa.Code §§ 1003.27(a)(10), 1005.-12(a)(15) (1992). The Ambulance Association's alleged discrimination is purely private conduct that cannot fairly be attributed to the Commonwealth. Accordingly, the Commonwealth's involvement with the Ambulance Association does not qualify as state action under the close nexus test.

## D. STATE LAW CLAIMS

The plaintiff has failed to establish "state action" in the Ambulance Association's alleged discriminatory conduct under the applicable public function, symbiotic relationship, and close nexus tests. Therefore, the Ambulance Association was not acting under color of state law as required by 42 U.S.C. § 1983. Consequently, the plaintiff cannot recover on her section 1983 claim.

■■■ Having denied liability as to the sole federal claim presented, there is no need to address the merits of the plaintiff's state law

claims. Under these circumstances, the decision to entertain or dismiss the pendent state law claims is within the district court's discretion. Courts should ordinarily decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Weaver v. Marine Bank*, 683 F.2d 744, 746 (3d Cir.1982); 28 U.S.C. § 1367(c)(3). Accordingly, we decline to exercise supplemental jurisdiction over the plaintiff's state law claims. We note that the plaintiff may pursue these claims in state court. 28 U.S.C. § 1367(d); 42 Pa.Cons.Stat. Ann. § 5103(b) (Supp.1992).

An appropriate order follows.

### ORDER

AND NOW, this 13th day of November, 1992, upon consideration of the Defendant, West End Voluntary Ambulance Association's Motion for Summary Judgment and the Plaintiff's Response thereto, it hereby **ORDERED** that:

1. the Defendant's Motion for Summary Judgment, filed on September 11, 1992, is **GRANTED** as to Count III and **DENIED** as to Counts I, II, and IV;

2. Count III of the Plaintiff's Complaint is hereby **DISMISSED WITH PREJUDICE;** and

3. Counts I, II, and IV of the Plaintiff's Complaint are hereby **DISMISSED WITHOUT PREJUDICE** to the Plaintiff's right to pursue these claims in State Court.

Additionally, in light of the above disposition, the Court has reconsidered its **ORDER** of October 16, 1992, allowing the Plaintiff leave to amend her Complaint in order to bring the additional Defendants into the action. The Court's **ORDER** is hereby **AMENDED AS FOLLOWS.**

AND NOW, this 13th day of November, 1992, upon consideration of the Plaintiff's Motion to Amend her Complaint, the Defendant's Response thereto, and the Court's Opinion and Order of November 13, 1992 in the Defendant's Motion for Summary Judgment, it is hereby **ORDERED** that:

1. the Plaintiff's Motion to Amend her Complaint, filed on October 22, 1992, in order to bring the additional Defendants, Timothy Frey, Peggy Ann Broome, and Sheri Marie Hoak into the action, is hereby **DENIED** on the ground that the proposed amendments would be futile as a result of our Opinion and Order in the Defendant's Motion for Summary Judgment, see *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (futility of the amendment is a reason to deny leave to amend);

2. Count III of the Plaintiff's Amended Complaint, filed on November 9, 1992, is hereby **DISMISSED WITH PREJUDICE;** and

3. Counts I, II, IV–XIII of the Plaintiff's Amended Complaint are hereby **DISMISSED WITHOUT PREJUDICE** to the Plaintiff's right to pursue these claims in State Court. THIS CASE IS CLOSED.