John W. TIMSON, Plaintiff,

v.

Jerry WEINER et al., Defendants.

Civ. A. No. 74-337.

United States District Court,
S. D. Ohio, E. D.

April 15, 1975.

John W. Timson, pro se.

David L. Day, Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

This is a civil rights action brought pursuant to 42 U.S.C. §§ 1983 and 1985(2); this Court has jurisdiction pursuant to 28 U.S.C. § 1343. This matter is before the Court upon defendants' motion to dismiss for failure to state a claim upon which relief can be granted. On such a motion, the issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer* v. *Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley* v. *Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Further, since plaintiff's complaint is drafted *pro se*, it is to be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines* v. *Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

Read in this light, the complaint alleges, *inter alia*, that on May 3, 1973,

plaintiff brought certain charges of improper conduct against Mr. Jay C. Smith, then Chief Probation Officer of the Court of Common Pleas of Franklin County, Ohio; that as a result of these charges Mr. Smith was discharged from his employment; that Mr. Smith appealed this discharge to the State Personnel Board of Review; that the attorneys defendant herein were retained by Mr. Smith to represent him during this appeal; that a public hearing of the Board of Review occurred from July 9 through July 13, 1973; that on July 9, 1973, plaintiff attempted to attend this public hearing and was required by the presiding officer to leave when defendant Weiner represented that plaintiff had been subpoenaed to testify at the hearing and asked for a separation of witnesses; that plaintiff had not in fact been subpoenaed to testify and that defendant Weiner falsely and maliciously made said representation, knowing it to be untrue.

It is further alleged in the complaint that plaintiff returned to the public hearing on July 10, 1973; that upon his entry into the room both the defendant attorneys caused him to be served with a subpoena pertaining to the Board of Review proceedings; that the defendants entertained no intention of calling plaintiff as a witness, and served him with a subpoena for the purposes of preventing plaintiff from attending the hearing and of punishing him by requiring him to remain available for testifying should he be called; that he was required to leave the hearing room because of such service and because of defendants' request for separation of witnesses; that the hearing was concluded without plaintiff ever having been called as a witness; and that plaintiff as a result of having been subpoenaed lost four days of employment, and because he did not testify, witness fees.

The complaint describes these alleged incidents in more detail, and alleges others; since I find that the alleged facts as set out above state a cause of action under 42 U.S.C. § 1983, I do not reach the questions whether the other allegations state § 1983 claims or whether the complaint states a cause of action under 42 U.S.C. § 1985(2).

Since 42 U.S.C. § 1983 concerns only action taken "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory," it is axiomatic that purely private conduct by private individuals cannot give rise to a cause of action under that section. As a general rule, the conduct of counsel, whether retained or appointed, in representing clients before a state tribunal does not in and of itself constitute action under color of state law for purposes of 42 U.S.C. § 1983. See, *e. g.*, *Harkins* v. *Eldredge*, 505 F.2d 802 (8th Cir. 1974); *Hill* v. *McClellan*, 490 F.2d 859 (5th Cir. 1974); *Kenney* v. *Fox*, 232 F.2d 288 (6th Cir.), cert. den. 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956). The doctrine has been articulated by one court as follows:

> Lawyers who are not also parties in interest and are engaged in private litigation on behalf of clients do not act under color of state law within the meaning of 42 U.S.C. § 1983. Every litigant is entitled to a zealous advocate in the presentation of his matters before the court. The state merely provides a forum for the litigants and although lawyers are considered 'officers of the court,' they are not officers of the state within the meaning of the Civil Rights Act.

*Jones* v. *Jones* 410 F.2d 365, 366 (7th Cir. 1969), cert. den. 396 U.S. 1013, 90 S.Ct. 547, 24 L.Ed.2d 505 (1970). It is clear, therefore, that if the complaint herein sufficiently alleges actions taken by the defendants under color of state law, it must do so by some means other than merely alleging that they are attorneys who engaged in litigation before an administrative agency of the State of Ohio.

A review of the many cases which hold that an attorney who litigates a cause in a state forum may not thereafter be sued under § 1983 indicates that

virtually all of these unsuccessful federal lawsuits were brought by a party to the state litigation who was unsuccessful in the state forum. See, *e. g., Glasspoole v. Albertson,* 491 F.2d 1090 (8th Cir. 1974) (defendant in state divorce contempt proceeding suing plaintiff and her attorney); *Page v. Sharpe,* 487 F.2d 567 (1st Cir. 1973) (unsuccessful client suing his appointed attorney); *Espinoza v. Rogers,* 470 F.2d 1174 (10th Cir. 1972) (client suing his public defender); *Kenney v. Fox, supra* (civilly committed mental patient suing attorney who filed commitment action). It is readily apparent that there is a significant interest sounding in comity, over and above any question concerning state action, which militates against permitting unsuccessful state litigants from in effect re-litigating their state lawsuits in a federal forum. This concern was expressed by the United States Court of Appeals for the Tenth Circuit in an early case involving the liability of an attorney under the Civil Rights Act. In *Bottone v. Lindsley,* 170 F.2d 705, 707 (10th Cir. 1948), *cert. den.* 336 U.S. 944, 69 S.Ct. 810, 93 L.Ed. 1101 (1949) (citations omitted) the court expressed a fear of opening "the door wide to every aggrieved litigant in a state court proceeding, and set[ting] the federal courts up as an arbiter of the correctness of every state decision. 'The Fourteenth Amendment did not alter the basic relations between the States and the national government.'" This Court firmly adheres to the view, expressed in *Bottone* and implicit in many other reported decisions, that § 1983 may not be used as a vehicle for the venting of frustration by an unsuccessful state litigant. However, where as in the instant case suit is brought by a person not a party to the state proceedings alleging deprivation of federally secured rights by abuse of power flowing directly from the state, the aforementioned concern of comity between the federal and state systems does not arise.

The phrase "color of state law," whether used in the context of §

1983 or in the context of its criminal counterpart, 18 U.S.C. § 242, is synonymous with the concept of "state action" under the Fourteenth Amendment. *United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). Private as well as public actors may engage in state action; the determination turns on whether the state has in some way involved itself in the actions of an individual to some significant extent. *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). The United States Supreme Court stated in *Evans v. Newton,* 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1966) that "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." The United States Court of Appeals for the Sixth Circuit has recently summarized the principle as follows:

> The thrust of the state action cases taken as a whole indicates that conduct apparently private may be essentially public when inexorably entwined with governmental regulation or policies. In a variety of situations, private actors have been endowed by the state with governmental powers or functions to such an extent that they were considered in essence agencies or instrumentalities of the state and consequently subject to constitutional limitations.

*Palmer v. Columbia Gas of Ohio, Inc.,* 479 F.2d 153, 161 (6th Cir. 1973) (citations omitted). *Evans, Palmer* and many similar cases concerned broad grants of authority by the state to private individuals or groups which, taken as a whole, led to the conclusion that acts taken by private persons pursuant to the grants of authority were in essence acts of the state itself. In the instant case a more specific grant of power is at issue, that of the subpoena power of the state.

In *United States* v. *Wiseman*, 445 F. 2d 792 (2d Cir.), *cert. den.* 404 U.S. 967, 92 S.Ct. 346, 30 L.Ed.2d 287 (1971), the United States Court of Appeals for the Second Circuit upheld the 18 U.S.C. § 242 convictions of two professional process servers. The court declined to find that the act of every New York process server was "direct" state action, because New York law permitted virtually any adult person to serve process and provided little or no supervision of such process serving. 445 F.2d at 795. The court nevertheless found state action, under the "public function" theory:

> Unlike most functions involved in the conduct of a lawsuit by private parties, the service of summons is essentially and traditionally a public function. . . . That the defendants sought to take advantage of their authority to perform this "act of public power" by signing blank affidavits of service without actually effecting service does not remove their activities from the "public" classification.

445 F.2d at 796 (citations omitted). The defendants in *Wiseman* were not heavily regulated by the state as was the defendant in *Palmer*, nor had they been given a broad grant of governmental power as had the defendants in *Evans*. Rather, the *Wiseman* defendants exercised a narrow and specific power which the Second Circuit found to be essentially public in nature.

■■ A subpoena is the order of an arm of the state compelling the presence of a person under threat of contempt. The subpoena involved in the instant case is that of the State Personnel Board of Review; this Board is empowered by statute to require the presence of witnesses at its hearings.[1] That the state traditionally[2] grants litigants and their attorneys the privilege of invoking the subpoena power does not alter the fact that it is the state, not the litigant or his attorney, which is compelling the attendance. The state could not effectively provide a forum for the litigation of legal disputes without power to compel the attendance of witnesses. The fact that a subpoena issues in the name of the state and the fact that a subpoena implements the general state interest of providing a forum for litigation amply demonstrate that the issuance of a subpoena is not a private act. The litigant or attorney who invokes the subpoena power acts for the state. Because he is engaged in litigation in a state forum, he has been entrusted by the state with significant state power.

I hold that the issuance of a subpoena of the State Personnel Board of Review is an act of the State of Ohio, and that when such a subpoena is caused to be issued by a private litigant or attorney pursuant to the subpoena privilege granted litigants by the State of Ohio, such action is state action for purposes

---

1. The Ohio statute governing the issuance of subpoenas compelling attendance at hearings of the State Personnel Board of Review was, in July of 1973, R.C. § 143.01.2(G) [now R.C. § 124.03(G)]. This section provided in pertinent part that the Board of Review had power to "subpoena and require the attendance . . . of witnesses . . . in the same manner and to the same extent as provided by division (E) of section 143.07 of the Revised Code . . . ." R.C. § 143.07(E) [now R.C. § 124.09(E)] provided in pertinent part that the Director of State Personnel had power to "subpoena and require the attendance . . . of witnesses and the production of . . . documentary evidence pertinent to the . . . hearings on any matter which he has authority to . . . hear . . . ." This same section further provided that

when "any person, in disobedience to any subpoena issued by the director or the board . . . fails or refuses to attend and testify . . . the court of common pleas . . . upon application of the director or the board . . . shall compel obedience by attachment proceedings as in the case of disobedience of the requirements of a subpoena issued from such courts or a refusal to testify therein."

2. See, *e. g.*, Ohio R. Civ.P. 45(A), which provides that the clerk of court "shall issue a subpoena . . . signed and sealed but otherwise in blank, to a party requesting it . . . ." Rule 45(E) provides, "At the request of any party, subpoenas for attendance at a hearing or trial shall be issued by the clerk of the court in which the hearing or trial is held."

of the Fourteenth Amendment and action under color of state law for purposes of 42 U.S.C. § 1983. It is not the status of the attorneys defendant herein as attorneys which is determinative; it is the fact that a private person, be he attorney or layman, has under the facts alleged invoked the direct power of the state.

This result is not altered by the decisions of the United States Court of Appeals for the Seventh Circuit upon which defendants rely, at page nine of their memorandum, for the proposition that "abuse of process is not an act which can form the basis of an action under Sec. 1983." *Skolnick* v. *Martin*, 317 F.2d 855 (7th Cir.), *cert. den.* 372 U.S. 953, 83 S.Ct. 951, 9 L.Ed.2d 977 (1963) and *Sarelas* v. *Porikos*, 320 F.2d 827 (7th Cir. 1963), *cert. den.* 375 U.S. 985, 84 S.Ct. 519, 11 L.Ed.2d 473 (1964) were, in the first place, both brought by a party to the state court proceedings and were therefore suspect as retaliatory suits. As noted hereinbefore, there is a significant concern of federalism which militates against permitting such actions to be brought in a federal forum. More important is the distinction between a subpoena of the state and the discovery procedures—the taking of depositions—involved in *Skolnick* and *Sarelas*. A notice of the taking of a deposition is the act of a party or his counsel, not the act of the state. The power of the state may, of course, become involved in such discovery practices, as in the case in which a party is ordered by a court to submit to deposition. *Cf. Sarelas, supra,* 320 F.2d at 828. The state, however, does not grant litigants the authority to cause notices of deposition to issue under threat of contempt; rather, it provides for enforcement of discovery procedures by subsequent court order. The fact that an agency of the state is interposed between the party seeking discovery and the point at which discovery may be had at the compulsion of the state requires the conclusion that discovery procedures are not direct state action by the private litigant or his counsel. I therefore find neither *Skolnick* nor *Sarelas* to be applicable to the state action question presented by the case before this Court.

 Having found that the complaint does sufficiently allege that the defendants acted under color of state law, the Court must now turn to the question whether a "deprivation of any rights, privileges or immunities secured by the Constitution and laws" is alleged. 42 U.S.C. § 1983. Plaintiff alleges deprivations of his rights under the First and Fourteenth Amendments to the United States Constitution. I find that there is a constitutional right under the First Amendment not to be arbitrarily excluded by persons acting under color of state law from a state proceeding which is otherwise open to the public. *Cf. Sparrow* v. *Goodman,* 361 F.Supp. 566 (W.D.N.C.1973) *with Borreca* v. *Fasi,* 369 F.Supp. 906 (D.Hawaii 1974). I further find that the complaint alleges a deprivation of liberty without due process of law under the Fourteenth Amendment when it alleges that plaintiff was required to remain available to testify at the Board of Review hearing if there was never an intention of calling him as a witness.[3]

 I hold that a private individual may be held to respond in damages under 42 U.S.C. § 1983 for invoking the subpoena power of the state if it is shown that the purpose of the subpoena was not to require the presence of a potential witness but to exclude the subpoenaed person from being present at a public function or to harass or punish the person.

Motion denied.

3. Since the complaint alleges that plaintiff was served with a subpoena during the hearing rather than before it commenced, it would appear that he had no opportunity, before the alleged deprivation of liberty occurred, to obtain a court order quashing the subpoena. It is arguable that the deprivation would have ceased at that point in time when plaintiff could have obtained such an order; this is, however, a question concerning damages and is therefore not before the Court on this motion to dismiss.