OPINION OF THE COURT
Lawrence E. Kahn, J.
This CPLR article 78 proceeding seeks a judgment invalidating the Commissioner of Education’s decision dated April 2, 1980, wherein he dismissed petitioner’s appeal. It further seeks petitioner’s reinstatement as a school psychologist in the Edgemont Union Free School District. The National Association of School Psychologists, the American Psychological Association, the New York State Psychological Association, and the West- *921 Chester County Psychological Association have been permitted to appear herein as amici curiae. The petition alleges that petitioner is a certified school psychologist who was dismissed after 12 years of service to the respondent school district, solely because she adhered to professional obligations to perform evaluations of handicapped children in the manner required under newly enacted State and Federal laws and regulations.
The commissioner found that petitioner was a competent and highly regarded member of the faculty of the school district from 1967 through 1976, but that beginning with the 1976-1977 school year (the time that the newly enacted Federal and State laws concerning the rights of the handicapped became effective), the district began to voice dissatisfaction with petitioner’s performance and eventually, on May 8, 1979, terminated her employment. Two issues will be addressed hereby. First, it must be determined whether petitioner was a tenured employee, not subject to discretionary dismissal by the respondent. Secondly, at issue is whether the commissioner was correct in declining to consider petitioner’s specific allegations concerning the reason for her dismissal by holding that she lacked standing to challenge respondent’s alleged neglect of their statutory duties regarding handicapped children.
In reviewing a decision of the commissioner pursuant to section 310 of the Education Law, the standard of review is whether the decision was arbitrary and capricious, an abuse of discretion or contrary to law (CPLR 7803). The parameters of such review are very limited and will terminate where a rational basis is found to exist. (Matter of Strongin v Nyquist, 44 NY2d 943.) Nor may this court reverse such a decision merely because it would have reached a contrary conclusion (Matter of Sullivan County Harness Racing Assn, v Glasser, 30 NY2d 269). However, while the commissioner is given wide latitude and discretion in matters concerning the educational system of our State, the courts must nevertheless scrutinize decisions in matters concerning the interpretation of basic constitutional and statutory rights or questions of law (Duncan v Nyquist, 43 AD2d 630).
*922 Petitioner argues that she was a tenured employee who was therefore not subject to discretionary dismissal by the respondent school district. The facts in this regard are not in dispute. Petitioner was appointed on June 13, 1967 as an elementary school psychologist on a four-day per week basis and as such was a part-time employee of the district. The commissioner found that “the record in this case provides insufficient basis for concluding that petitioner was eligible for tenure or that she gained tenure by acquiescence when respondents continued her services beyond the usual probationary period.” (Matter of Forrest, 19 Ed Dept Rep 526, 528 [Decision No. 10,237].)
A rational basis exists for the commissioner’s findings. The law of this State is clear that service as a part-time employee does not constitute probationary service and does not lead to eligibility for tenure (Matter of Rosenberg v Board of Educ., 51 AD2d 551). Petitioner concedes that as long ago as February 4, 1978, she was informed in writing by the superintendent that as a part-time teacher, she was not. eligible for tenure and was employed on a yearly contractual basis. Petitioner’s reliance on Matter of Moritz v Board of Educ. (60 AD2d 161) is misplaced. Unlike the case at bar, where petitioner was notified that she could not be granted tenure on the basis of her part-time service, therein, there had been a specific and deliberate grant of tenure by the board of education with full knowledge of the part-time status of the teacher. Nor, as in the case of Matter of Schlosser v Board of Educ. (62 AD2d 207), did petitioner’s collective bargaining agreement specifically grant tenure credit for part-time service. Accordingly, the commissioner’s determination that petitioner had not gained tenure must be upheld.
Petitioner, as an untenured part-time employee, served at the will of the board, which had the authority to terminate her contract for employment. However, “[c]oncededly, an exception to this general principle would exist should petitioner establish that the termination of her services was for a constitutionally impermissible purpose.” (Memorandum of law submitted on behalf of respondent Ambach, p 9.) Concerning this issue, respondent Ambach found that: “Petitioner also alleges that respon *923 dents terminated her services in retaliation for her thorough evaluations of children suspected of having handicapping conditions which, petitioner says, tended to expose respondents’ attempts to avoid their statutory obligations regarding such children. The essence of petitioner’s argument is that * * * respondents interfered with petitioner’s constitutional right to free expression and her performance of duties pursuant to Federal and State laws concerning the education of handicapped children. Petitioner contends that by these activities respondents attempted to avoid documentation by petitioner of respondents’ failure to properly identify handicapped children within the school district, in violation of its duties under Education Law Article 89 and Public Law 94-142.” (Matter of Forrest, 19 Ed Dept Rep 526, 528-529 [Decision No. 10,237].) Respondent Ambach sidestepped petitioner’s contentions by finding that she did not have standing to raise this issue in that she was not an aggrieved party within the meaning of section 310 of the Education Law, because she had failed to show how the district’s alleged neglect of their statutory duties caused harm to her. “Petitioner is not an aggrieved party within the meaning of § 310 and her claim regarding respondents’ performance of statutory duties which do not concern her is dismissed” (Matter of Forrest, supra, p 529). In interpreting this section of the Education Law, the commissioner specifically found that: “[A]n appeal to the Commissioner of Education may be brought by any party considering himself aggrieved. In order to be aggrieved within the meaning of § 310 and to possess standing to appeal an action by a board of education, the person asserting the claim must demonstrate that he or she is injured in some way by that action.” (Matter of Forrest, supra, p 529.) Petitioner has affirmatively pleaded that she was indeed injured by the board’s alleged misconduct in that it resulted in her loss of a job. This is the hub of her claim and the basis by which the respective psychological associations have appeared herein as amici curiae. The commissioner’s determination not to decide whether respondents were neglecting their statutory duties regarding handicapped children resulted in a failure of petitioner to have her grievance aired, and upheld her termination as an employee of the *924 respondent school district without providing her a forum. As such, the determination becomes a “Catch-22” and is arbitrary and capricious in that there is not rational basis therefore.
While a school board is in the position of an employer, those professionals employed by a school board do have a level of professional competence and standards which must be recognized and respected, not only for the profession itself, but for the purpose of rendering the best service to the school board and ultimately to the students they serve. The ethical standards of any professional employed by a school board cannot be cavalierly dismissed as irrelevant to the employer-employee relationship, and may indeed become quite relevant in certain circumstances. Petitioner herein alleges that respondent school board required her to violate not only her professional standards and ethics, but the law as well and that when she refused to comply with the illegal and unprofessional mandates of said school board, she was summarily dismissed. These are serious allegations which warrant a complete determination. If, in fact, petitioner was dismissed solely due to her attempt to adhere to statutory mandates and her own professional standards as a psychologist, then her dismissal by said school board would be arbitrary, capricious and unconstitutional.
The contemporary concept of “mainstreaming” children with handicaps and learning disabilities into the regular student body has been recognized and implemented by both State and Federal legislation. These statutes and regulations recognize that persons with handicaps or learning disabilities have no inner limits nor outer bounds for achieving educational fulfillment. A school board should not be permitted to, in any way, impede the noble goals of such a law. All children, regardless of their handicaps or learning disabilities, to whatever degree, are entitled to receive the fullest opportunity of growth and fulfillment within allocated educational resources provided by a school district-. While there may be varied opinions as to the validity ofisuch a law among taxpayers, parents, teachers and school administrators, the concept is statutorily mandated. The recognition of this responsi *925 bility is evidenced by the State Department of Education itself, which inspected respondent school district and issued a critical report which tends to support the allegations of petitioner herein. “This case far transcends the personal interest of Petitioner, although amici considers the defense of those interests an important subsidiary issue. At bottom, this case concerns the right of handicapped children and their parents to competent psycho-educational services and placement in appropriate special education programs and related services.”
Petitioner has alleged that the respondent school district’s conduct impermissibly forced her to violate both the standards of her profession and of the newly enacted State and Federal statutes and regulations concerning education of the handicapped. She has not been permitted to establish that her conduct was a substantial or motivating factor in the board of education’s decision not to rehire her. Thus, respondent Ambach’s decision was effected by an error of law (CPLR 7803, subd 3) and shall be remanded to the respondent Ambach for further administrative proceedings to more fully develop the record and to resolve the issues of (a) alleged neglect of statutory duties regarding handicapped children in the Edgemont Union Free School District, and (b) if said issue is answered in the affirmative, whether said neglect resulted in the termination of petitioner’s services for a constitutionally impermissible purpose.
Submit judgment.