Suzanne ROSS, Plaintiff,

v.

Nathan ALLEN [correct name Niathan Allen], Executive Director of Henry Street Settlement, William Spiller, Director of Henry Street School, and Robert Wolf, Clinical Director of Henry Street School, Defendants.

80 Civ. 3422 (RWS).

United States District Court,
S. D. New York.

May 6, 1981.

New York Civil Liberties Union, for plaintiff; Steven R. Shapiro, Robert M. Levy, New York City, of counsel.

Douglas F. Eaton, New York City, for defendants.

## OPINION

SWEET, District Judge.

Plaintiff Suzanne Ross ("Ross") brought this civil rights action against the defendants, directors of the Henry Street Settlement ("the Settlement") and the Henry Street School ("the School"), alleging that they violated certain of her constitutional and statutory rights by terminating her employment as a school psychologist after she complained to the Board of Education about their suspension of one student at the school. The case is before me on a motion to dismiss, brought pursuant to Rule 12(b)(6), Fed.R.Civ.P. The motion is denied in part and granted in part.

The complaint alleges the following facts.

The School was established and operates as a school for handicapped children. Most of its students are placed there by the New York City Board of Education ("the Board") pursuant to a contractual agreement. The Board retains responsibility for the students' education. It monitors and regulates the School's programs. The School receives substantial government funding, which is channelled to it through the Board as conduit. Some of its facilities are located in government buildings.

Ross was hired by the School in October, 1979. She is a psychologist, whose duties at the School included "psychological evaluation, psychotherapy, and teaching."

In late March of 1980, one of Ross' students was told by officials at the School to stay home indefinitely because of certain behavior problems. The student had no hearing and was not formally suspended. When Ross learned of this action, she spoke with the defendants. She told Robert Wolf ("Wolf") that her clinical judgment was that it was in the child's best interest to remain in school. She also told the defendants that the School had acted illegally. She read the applicable law to Wolf.

In the face of the defendants' inaction, Ross advised the student and her mother of the student's procedural rights. She also contacted the Child Advocacy Project of the New York City Board of Education, which agreed with Ross about the alleged infraction of the student's rights. Two days later, on April 24, 1980, the School reversed its position and reinstated the student. According to the allegations of the complaint, the student had missed ten days of school.

Also on April 24, Ross was dismissed. She was given two reasons for her dismissal, one, that she had contacted the Board of Education, an "outside agency," about the School's allegedly illegal activities, and two, that she had assumed an inappropriate role as child advocate. Plaintiff appealed that dismissal through internal administrative channels; however, that appeal was unsuccessful.

For purposes of this motion to dismiss, the preceding recitation of facts taken from Ross' complaint is taken as true. *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972).

Based on these alleged facts, Ross asserts three separate causes of action. First, she asserts a cause of action under 42 U.S.C. § 1983 for violation of her First and Fourteenth Amendment rights. Second, she alleges that her rights under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and regulations promulgated thereunder were infringed by her dismissal. Finally, she claims that defendants' actions violated her rights under the Education for All Handicapped Children Act, 20 U.S.C. § 1401, et seq., (EAHCA) and applicable regulations.

Defendants challenge the legal sufficiency of the complaint on all three grounds. As to the first cause of action, they maintain that the requisite state action to sustain a claim under § 1983 is lacking. As to the second cause of action, they claim that § 504 is inapplicable here because no discrimination on the basis of handicap is alleged. In addition, as to both the second and third causes of action, defendants contend that Ross lacks standing under the statutes and regulations she invokes.

On a motion to dismiss, "the sole issue is whether under the facts alleged in the plaintiff's complaint it appears to a certainty that the plaintiff is entitled to no relief." *Holmes v. Silver Cross Hospital of Joliet*, 340 F.Supp. 125, 130 (N.D.Ill.1972). Under the first two causes of action alleged here, in accordance with the facts as pleaded, Ross may be able to establish entitlement to

relief. However, I agree with the defendants that she lacks standing to sue under EAHCA. Accordingly, at this stage of this litigation, I reject defendants' challenge to the legal sufficiency of Ross' first two claims, but grant the motion to dismiss the third.

It is true, as defendants assert, that on her first cause of action plaintiff has the burden of proving that her dismissal was the result of state action. *See Jensen v. Farrell Lines, Inc.*, 625 F.2d 379, 384 (2d Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981). However, under this complaint she may be able to carry that burden in accordance with the "state-function" approach to determining state action. Under this approach a court may find state action if "the conduct of the private actor is equivalent to the performing of a state function, or is traditionally associated with sovereignty." *Id.*

Application of the state function test is problematic. However, light may be shed on the instant case by a comparison of two cases in this Circuit, *Perez v. Sugarman*, 499 F.2d 761 (2d Cir. 1974) and *Lefcourt v. Legal Aid Society*, 445 F.2d 1150 (2d Cir. 1971).

*Perez* was a civil rights action alleging constitutional infringements by, among others, two private child care institutions, the New York Foundling Hospital and St. Joseph's Home for Children. The complaint alleged unconstitutional detention of the plaintiff's children. The court applied the state function test and found that the institutions acted "under color of state law," and were therefore open to suit under § 1983. In doing so, it placed primary reliance on the statutory scheme involved. Under that scheme, the government was charged with primary responsibility for the welfare of needy children, but could discharge that responsibility either directly or through an authorized agency. The defendant institutions were such authorized agencies. The court found that although it had entrusted the plaintiff's children to those private institutions, the state was "in effect providing the care *through* [those] institu-

tions," *Perez, supra,* at 765, and concluded that "[t]his exercise of the administrative placing prerogative does not affect in any way the State's ultimate responsibility for the well-being of the children, and, consequently, the public nature of the function being performed." *Id.*

In *Lefcourt,* the plaintiff alleged that his dismissal from service as a Legal Aid Society ("Society") attorney abridged his First and Fourteenth Amendment rights. The Second Circuit affirmed the district court's dismissal of the complaint, finding that the Society did not perform a public function for purposes of § 1983. The court emphasized the autonomy of the Society, and the fact that its primary duty was to its clients, not to the city. It also stressed the fact that legal representation of criminal defendants is traditionally a private, not a public function, notwithstanding the fact that the state might be forced to assume responsibility for indigent defendants in the absence of organizations such as the Society. *See also Graseck v. Mauceri,* 582 F.2d 203 (2d Cir. 1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 91 (1979).

This case more closely tracks *Perez* than *Lefcourt.* The statutory scheme involved here is, in all relevant respects, indistinguishable from that relied upon by the court in *Perez.* Under New York Education Law §§ 4401 *et seq.,* the state has the duty to provide for the educational needs of handicapped children. It can fulfill that duty either through operating programs in the public schools or through contracting with private institutions, but it retains responsibility for the provision of educational services regardless of the means by which they are provided. *See* N.Y. Education Law § 4402 2.a. Contracts with private institutions are subject to approval by the State Commissioner of Education. Those institutions receiving public financial assistance are subject to inspection by the state.

The Henry Street School operates within this statutory framework. At this stage of this litigation, it would therefore appear to stand in a legal posture similar to that assumed by the private child care institutions in *Perez.* Here, as in *Perez,* it would appear that the state in effect provides the mandated care through the private institution with which it contracts.[1]

*Lefcourt* is distinguishable in several respects. The School, unlike the Society, is subject to monitoring and regulation and is far from autonomous. Although the issue remains unsettled, education, unlike legal representation, appears to be treated as a more characteristically governmental than private function for purposes of state action analysis. *See generally Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 163, 98 S.Ct. 1729, 1737, 56 L.Ed.2d 185 (1978) (education acknowledged to be more of a public function than dispute resolution, though degree to which states can delegate educational functions and thereby avoid Fourteenth Amendment strictures undecided).

■ Under *Perez,* because of the statutory scheme outlined above, and primarily because of the primary responsibility for the education of the handicapped retained by the state, I find that under the allegations of this complaint plaintiff may be able to prove that the actions of the School were state actions. She may therefore be able to sustain a cause of action under § 1983. The motion to dismiss the first cause of action in this complaint is therefore denied. This denial, of course, in no way suggests prejudgment of the merits of plaintiff's First Amendment claim. A determination regarding the protection afforded Ross' speech and the factors actually involved in her dismissal must await trial. *See generally Snepp v. United States,* 444 U.S. 507, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980); *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pickering v. Board*

1. *Rendell-Baker v. Kohn,* 641 F.2d 14 (1st Cir. 1981), on which defendants rely, is distinguishable. It is not clear from the opinion whether the statutory scheme involved there contemplates retention of responsibility by the state, and the decision does not turn on that factor. Here, by contrast, as in *Perez,* the state retains responsibility for the provision of the services involved.

*of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

As stated above, the second and third causes of action, the statutory claims, are challenged primarily on standing grounds. The § 504 claim is assailed for the additional reason that the complaint is said not to allege discrimination on the basis of handicap.

At this stage of this proceeding, it is not possible to say with certainty that under this complaint, plaintiff may not be able to prove discrimination on the basis of handicap. It may be that the theory of plaintiff's case will be, and the evidence will show, that the student's behavioral problems that prompted her suspension were linked to her handicap. Such a theory and such proof would support a claim of discrimination on the basis of handicap. *See S–1 v. Turlington,* 635 F.2d 342 (5th Cir. 1981).

However, even if that is not the nature of plaintiff's claim or proof, it is possible that she may make out a cause of action under § 504 and the regulations promulgated thereunder through other theories and proof not yet advanced. Furthermore, under that statute and those regulations, I find that she has standing, for the reasons that follow.

■ A regulation promulgated under § 504 of the Rehabilitation Act mandates that certain procedural rights be afforded handicapped children. *See* 45 C.F.R. § 84.- 36. That regulation is buttressed by the incorporation by reference of the anti-retaliation provisions of Title VI of the Civil Rights Act of 1964, *see* 29 U.S.C. § 794a(a)(2), 45 C.F.R. § 84.61. Under those provisions, Ross, as one who complained of an alleged violation of the Act, is protected against the kind of retaliation her complaint alleges. Because she is in the "zone of interests" meant to be protected by § 504 and these regulations and because she has suffered "injury in fact," Ross has standing to raise a claim under these provisions. *See Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

No comparable regulation has been promulgated under the Education for All Handicapped Children act. Despite that, plaintiff argues that an anti-retaliation rule should be implied. She points to the likelihood that the handicapped will lack the knowledge necessary to protect themselves and argues that protecting those who seek to vindicate the rights of the handicapped will ultimately safeguard the handicapped themselves. Plaintiff contends that under this "child benefit theory," she has standing under EAHCA to complain that her dismissal resulted from her attempts to challenge what she saw as a violation of her student's procedural rights.

No cases dealing with this issue and decided under EACHA have been cited to or found by the court. Plaintiff relies on *Forrest v. Ambach,* 436 N.Y.S.2d 119 (Misc.) (1980), in which a school psychologist, proceeding under N.Y. Education Law § 310, was found to have standing to contest her dismissal on the ground that it had been motivated by her attempts to comply with the law by providing statutorily mandated evaluations of students, her attempts to protect other rights of handicapped students, and her efforts to expose the school's neglect of its own statutory duties. The court found that the commissioner had been wrong in refusing to consider the petitioner's allegations concerning the reasons for her dismissal. The commissioner's refusal was based on his determination that the petitioner "lacked standing to challenge respondent's alleged neglect of their statutory duties regarding handicapped children." In overturning the commissioner's decision, the court found that according to petitioner's complaint the respondents' alleged neglect of their statutory duties and disapproval of petitioner's attempts to expose that neglect and fulfill her own duties had resulted in harm to the petitioner. Therefore the court concluded that Forrest had standing.

This case is not on all fours with *Forrest.* Here, there is no allegation that Ross was fired for acts she was required by law to perform. Ross was not under a statutory duty to inform the student or her parents of

their procedural rights. Such a requirement might very well carry with it legal protection for those performing their duties, but no such requirement is present here.[2]

Ross also argues that the court should imply an anti-retaliation provision here because "almost every civil rights law enacted by Congress in the past twenty years ... contains an anti-retaliation provision either in the statute itself or the implementing regulations." That fact could just as well lead to a conclusion contrary to that which Ross would have me draw. Congress and the administrative agencies have been quite explicit in other contexts when seeking to afford protection against retaliation. That they did not explicitly do so here could evince an intent to limit the scope of the statute's protection. It could evince mere oversight. But in the absence of congressional or administrative guidance, this court will not imply a provision the legislative and regulatory draftsmen did not themselves adopt.

█ Finally, even if the School did violate a statutory duty to the student, that violation did not cause the injury Ross complains of here, that is, her dismissal. For that reason, too, I decline to recognize an implied cause of action on Ross' behalf under EAHCA. *See Pavolini v. Bard Air Corp.*, 645 F.2d 144 (2d Cir. 1981).

Therefore, the motion to dismiss the third cause of action for lack of standing is granted. The motion to dismiss the first and second causes of action is denied.

IT IS SO ORDERED.

---

2. Ross also relies on *Caulfield v. Board of Education of the City of New York*, 583 F.2d 605 (2d Cir. 1978). *Caulfield* does not support her. The issue in *Caulfield* was not the standing of the teachers, as Ross asserts, but the jurisdiction of the administrative agency. The "child benefit theory" supported that jurisdiction, not the standing of the plaintiffs.