**Louise SANDERS, a Minor, By her Next Friend, Paul A. SANDERS, and Paul A. Sanders, individually, Plaintiffs,**

v.

**MARQUETTE PUBLIC SCHOOLS and Michigan Department of Education, Defendants.**

No. M81–153 CA2.

United States District Court,
W.D. Michigan, N.D.

April 14, 1983.

**1364**

Hansley, Neiman, Peterson, Beauchamp, Stupak & Bergman by Frank A. Stupak, Jr., Escanaba, Mich., for plaintiffs.

Thrun, Maatsch & Nordberg by Harry J. Zeliff, Lansing, Mich., for defendants.

## OPINION RE MOTION FOR SUMMARY JUDGMENT

HILLMAN, District Judge.

This action is brought pursuant to 29 U.S.C. § 794, *et seq.*, 20 U.S.C. § 1401, *et seq.*, 42 U.S.C. § 1983, and state tort law. Jurisdiction is alleged under 28 U.S.C. §§ 1331(a) and 1343(3). Presently before the court is defendants' motion for summary judgment.

Plaintiff Louise Sanders (hereinafter "Louise") was enrolled in the Marquette public school system from 1963 until the fall of 1978. During those years, plaintiff Paul Sanders (hereinafter "Mr. Sanders"), father of Louise, alleges that defendants failed to evaluate Louise properly, failed to place her properly in the schools, failed to inform the Sanders of Louise's educational and behavioral problems, and failed to plan with the Sanders an appropriate educational program for Louise. These acts allegedly violate Louise's rights to non-discriminatory treatment and to a "free and appropriate education" under the above-cited legislation. Defendants' conduct also allegedly caused Mr. Sanders great emotional distress and entailed the expenses of providing Louise with alternative education.

Defendants have moved for summary judgment on the grounds that 29 U.S.C. § 794 and 20 U.S.C. § 1401 confer no individual causes of action on plaintiffs, or at least no suits for damages, as sought here; that, even if suit is technically permissible, it is barred by the statute of limitations; that an action for violation of 29 U.S.C. § 794 and 20 U.S.C. § 1401 may not be brought under 42 U.S.C. § 1983, and that plaintiffs have failed to state a cause of action for negligence under state tort law.

## DISCUSSION

■ The disposition of a motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c) provides, in pertinent part, that summary judgment shall be rendered if the pleadings, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In applying the standard established by Rule 56(c), the court must consider, in a light most favorable to the party opposing the motion, materials offered in support of the motion as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file. *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979).

## I. STATUTE OF LIMITATIONS

Neither 20 U.S.C. § 1401, the Education for All Handicapped Children Act (hereinafter "the EAH"), nor 29 U.S.C. § 794, the Rehabilitation Act of 1973 ("the Rehabilitation Act"), provide for limitations periods on actions brought pursuant to those acts. The provision of the EAH authorizing federal court review of state administrative procedures concerning handicapped children similarly does not limit the time in which such actions may be brought. The enforcement provision of the Rehabilitation Act, Title VI of the Civil Rights Act of 1964, also does not fix a limitations period. *See,* 29

U.S.C. § 794a. Defendants claim that, in the absence of a federally-prescribed limitations period, state statutory limitations periods should apply. Defendants next argue that the "most appropriate" state limitations statute is supplied by M.C.L.A. § 600.5805(8); M.S.A. § 27A.5805(8), which requires actions to be brought within three years of the accrual of a claim.[1] According to defendants, plaintiffs' claims accrued by the spring of 1978, and that when plaintiffs filed suit in August of 1981, their claims were time-barred.

■ Michigan law may be adopted to supply the limitations period for actions brought under federal statutes. *See, e.g.,* *UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *Marlowe v. Fisher Body,* 489 F.2d 1057 (6th Cir.1973); *An-Ti Chai v. Michigan Technological University,* 493 F.Supp. 1137 (W.D. Mich.1980). Even if the court were to determine that M.C.L.A. § 600.5805(8) governs the limitations periods of suits under the EAH and the Rehabilitation Act, from the facts presently before the court, plaintiffs' claims do not appear to have been asserted too late. Plaintiffs allege that Louise was enrolled in the Marquette school system until September of 1978, at which time Mr. Sanders withdrew Louise from the system and obtained other schooling for her. It appears that Louise was in fact free to return to the Marquette schools in the fall of 1978. It may be argued that until Louise was withdrawn from the system, defendants may have remedied the harms plaintiffs claim to have suffered, and that, consequently, plaintiffs' claims did not accrue until Louise's withdrawal from the system precluded such a remedy. As plaintiffs filed suit in August of 1981, their claims would be timely.

Defendants claim to the contrary that Louise was withdrawn from the school system in the spring of 1978, at which time her claim purportedly accrued, and that, consequently, the August, 1981, filing was time-barred. There is evidence in the record, however, to support plaintiffs' assertion that Louise could in fact have attended a Marquette Public School in the fall of 1978, but for defendants' actions. There is some evidence that Mr. Sanders was contacted by the school system during the summer of 1978 about a program for Louise in the fall. These facts bear upon the question when plaintiffs' claims accrued. The parties thus obviously contest an issue of material fact which may not be settled by way of summary judgment. *Arnett v. Kennedy, supra; Smith v. Hudson, supra.* Consequently, defendants' motion for summary judgment on the ground that plaintiffs' claim was time-barred is denied pending further development of the factual record.

## II. FEDERAL CLAIMS

Plaintiffs' complaint presents several questions of law that are novel to this district. Courts in other jurisdictions have reached differing conclusions on the questions of whether there is an implied private right of action under both the EAH and the Rehabilitation Act; whether, if such actions are allowed, they must be preceded by the exhaustion of administrative remedies; whether, if such suits are allowable, a successful plaintiff may be awarded monetary damages, and whether a suit under 42 U.S.C. § 1983 may be brought on the basis of violations of rights secured by the EAH or the Rehabilitation Act. These questions, and others, are presented by the case at bar. I will address first the questions pertaining to the EAH, then the Rehabilitation Act, and then those questions concerning the alleged action under section 1983.

1. M.C.L.A. § 600.5805(8); M.S.A. § 27A.5805(8) provides:

"(1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section....

"(8) The period of limitations is three years after the time of death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property."

## A. *The EAH.*

█ The initial question presented is whether the EAH empowers a private person to bring suit for harm to rights allegedly secured him by the EAH. To date, courts have almost uniformly held that there is an implied cause of action under the EAH. *See, e.g., Miener v. State of Missouri,* 673 F.2d 969 (8th Cir.1982); *Mitchell v. Walter,* 538 F.Supp. 1111 (S.D. Ohio 1982); *Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981). Just as uniformly, however, the courts have held that the scope of the implied cause of action is restricted by the provisions of 20 U.S.C. § 1415(e)(2). That section provides jurisdiction for civil actions, and reads as follows:

"Any party aggrieved by the findings and decision made under subsection (b) of this section ... and ... under subsection (c) of this section, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."

This section limits the issues that may be presented in an action under the EAH. A party aggrieved by the findings of a "due process hearing" conducted by a state or local educational official may appeal those findings to a state or a federal district court. *Id.* In the instant case, plaintiffs have participated in local and state due process hearings on the question of Louise's placement in the Marquette public school system. Unsatisfied with the findings of those hearings, they are "aggrieved" within

the meaning of section 1415(e)(2). Consequently, they have properly sought review in this court of the propriety of the educational placement decision that concerns Louise. Therefore, the claim that the EAH does not allow a private cause of action does not state a basis for granting defendants' motion for summary judgment.

The next issue concerning the validity of an action under the EAH is whether administrative remedies must be exhausted before suit under section 1415(e)(2) may be brought. In the instant case, plaintiffs have exhausted the administrative remedies provided them under Michigan law,[2] and thus, whether or not "exhaustion" is required, their appeal is properly before the court.

Defendants raised the additional argument that plaintiffs' suit under the EAH was barred because the provisions of the Act on which plaintiffs now sue were not in effect during the time in question. First, I find that at least since 1975, provisions substantially similar to those now in effect did govern defendants' conduct.[3] Plaintiffs complain of defendants' conduct up to the fall of 1978, and during the fall of 1981, when defendants prepared an "individualized educational placement" for Louise. Consequently, it appears that the rights on which plaintiffs now bring suit were extant during the principal time frame of this litigation. Hence, summary judgment may not be granted on this ground.

█ The parties also dispute whether, when suing under the EAH, a private plaintiff may recover monetary damages. After analyzing the statute, its legislative history, and current case law, I find that monetary damages are not recoverable by a plaintiff bringing suit to vindicate rights conferred by the EAH.

In reaching this conclusion, I find the case of *Miener v. State of Missouri, supra,* persuasive. I further find nothing in the nature of the remedies and procedures es-

---

**2.** M.C.L.A. § 380.1701; M.S.A. § 15.41701, *et seq.,* and Public Administration Code § 340.-1701.

**3.** *See, e.g.,* Pub.L. 94–142, § 5(a), effective November 29, 1975.

tablished under the EAH to indicate that Congress intended to make monetary damages part of the "appropriate" relief the courts were empowered to provide.[4] A plaintiff is allowed a federal forum only to appeal the propriety of a placement decision; therefore, the only function of the reviewing court is to evaluate the merits of that placement, and, where the placement in question is found inappropriate, to fashion a proper educational placement for the plaintiff. It does not appear that Congress intended the reviewing court to have any other function. Awarding monetary damages even to plaintiffs who succeed in winning a new placement decision in the reviewing court would thus exceed the scope of authority Congress intended to confer on the court of review.

Furthermore, also in accord with the *Miener* court, I can find no justification for awarding money damages where a plaintiff shows that the defendants acted in bad faith or grossly misused their professional judgment. This conclusion differs from that reached by several other courts. *See,* for example, *Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981); *Tatro v. State of Texas,* 516 F.Supp. 968 (N.D.Tex.1981); *Monahan v. Nebraska,* 687 F.2d 1164, 3 EHLR Dec. 554:140 (8th Cir.1982). However, the provisions of the statute, and the legislative history discussed above, lead to the conclusion that Congress did not envision *any* circumstances in which the reviewing court could award monetary damages, even to the plaintiff who succeeds in having the educational placement altered by the reviewing court. Therefore, even if the plaintiffs here could show that the defendants acted towards Louise with bad faith or grossly misused their professional discretion in designing her educational placement, no monetary relief can be awarded.

█ One remaining question is whether a plaintiff may sue under 42 U.S.C. § 1983 for a violation of rights provided by 20 U.S.C. § 1401, *et seq.* I find that they may not, for the following reasons.

█ *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), appears to hold that rights provided by federal law almost always may be vindicated through actions under section 1983. Recently, however, it has become apparent that suits by way of section 1983 are not uniformly proper. *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) sets forth a detailed analysis to determine when actions under section 1983 may be brought. Four factors are of special concern: whether a private cause of action is available; whether the statute on which suit is desired provides a detailed statutory administrative and judicial scheme for its enforcement; whether the statute creates "new" rights, and whether the statute provides a damage remedy. *Id.; Anderson v. Thompson, supra* at 1217.

With reference to these actions, I find that an action under section 1983 to vindicate rights provided by the EAH is not warranted. First, there is available a private cause of action under the EAH. This allows a person covered by the EAH provisions affirmatively to assert those rights and to test their scope in a neutral judicial forum. Next, as noted earlier, the EAH provides a detailed administrative and judicial procedure in which to vindicate the rights provided by the EAH. If suits are allowed under section 1983 this enforcement mechanism will be by-passed. The legislative history of the EAH also indicates that Congress believed it created "new" rights when the EAH was enacted. This fact lends support to the view that actions under section 1983 would be inappropriate. In *Great American Federal Savings & Loan Assn. v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), the concurrence by Justice Powell clarifies the importance of this factor. The Court appears to be distinguishing between rights that existed when 42 U.S.C. § 1983 was enacted, and those that have been created statutorily in its wake. Rights created after the enact-

---

4. *See, e.g.,* S.Rep. No. 94–455, 94th Cong., 1st Sess. 49, *reprinted in* [1975] U.S.Code Cong. & Ad.News 1480, 1502, 1503; 121 Cong.Rec. 25531, 37025, 37412, 37415, 37417 (1975).

ment of section 1983 clearly do not seem to be those that section 1983 was intended to help vindicate. The last factor of special importance is the availability of a damage remedy under the EAH, the substantive statute in question. Based on an analysis of the EAH, I found that it did not envision the availability of a damage remedy. On succeeding in an action under section 1983, however, a plaintiff may be awarded monetary damages. The award of money damages in an action under section 1983 would thus conflict with the remedies Congress thought appropriate in actions under the EAH. In sum, on evaluating the factors highlighted in *Pennhurst,* I find that plaintiffs may not bring an action under section 1983 to vindicate rights created by the EAH.

### B. *The Rehabilitation Act.*

Defendants dispute whether plaintiffs may assert a cause of action directly under the Rehabilitation Act. For the reasons stated below, I find that plaintiffs may sue directly under the Rehabilitation Act; that exhaustion of administrative remedies is not a condition precedent to such a suit; that, should the facts so warrant, and subject to the limitations of the Eleventh Amendment, they may be entitled to monetary damages, and that they may also bring suit to vindicate their rights created by the Rehabilitation Act under 42 U.S.C. § 1983.

■ With near unanimity, the courts considering the question have found that a cause of action may be implied under the Rehabilitation Act.[5] *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), frames the analysis for this question. Under *Cort v. Ash,* the key factors are whether the plaintiff is a member of the class for whose special benefit the statute was enacted; second, whether any evidence of legislative intent on the question exists; third, whether allowing such private actions

would conflict with or be consistent with the underlying purposes of the legislative scheme; and finally, whether the cause of action is one traditionally relegated to state law, in an area basically of concern to the states, so that it would be inappropriate to infer a cause of action based solely on federal law. *Id.* at 78, 95 S.Ct. at 2087.

■ In the instant case, Louise is evidently a member of the class that Congress intended to reach by means of the Rehabilitation Act; she has been determined to have learning disabilities, such that she may be considered "handicapped" within the meaning of the Act. Mr. Sanders, however, is plainly not a member of the benefited class. Mr. Sanders has pointed to no evidence that supports his claim of entitlement to sue under the Rehabilitation Act.

The legislative history on the question of permitting individuals to bring private actions under the Rehabilitation Act supports the conclusion that Congress looked with favor on that prospect. In *Pushkin v. Regents of the University of Colorado,* 658 F.2d 1372 (10th Cir.1981), the court concluded that the legislative history showed that Congress clearly foresaw and approved of private actions to enforce the mandates of the Act. Statements such as the following are persuasive:

> "[The Rehabilitation Act] constitutes the establishment of a broad government policy that programs receiving Federal financial assistance shall be operated without discrimination on the basis of handicap. It does not specifically require the issuance of regulations or expressly provide for enforcement procedures, but it is clearly mandatory in form, and such regulations and enforcement are intended."

4 U.S.Code Cong. and Admin.News, pp. 6373, 6390 (1974). Even more persuasive is the bald statement that "[the Rehabilitation Act] permit[s] a judicial remedy through a private action." *Id.* at 6391.

---

5. *Jones v. Metropolitan Atlanta Rapid Transit Authority,* 681 F.2d 1376 (11th Cir.1982); *New Mexico Assn. for Retarded Citizens v. State of New Mexico,* 678 F.2d 847 (10th Cir.1982); *Miener v. State of Missouri,* 673 F.2d 969 (8th Cir.1982); *Prewitt v. United States Postal Ser-*

*vice,* 662 F.2d 292 (5th Cir.1981); *Pushkin v. Regents of the University of Colorado,* 658 F.2d 1372 (10th Cir.1981); *Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981); *Mitchell v. Walter,* 538 F.Supp. 1111 (S.D.Ohio 1982), and cases cited therein.

■ The third factor is whether allowing private actions would be consistent with the underlying purposes of the legislative scheme. The basic purpose of the Rehabilitation Act is to ensure that handicapped persons are not discriminated against by recipients of federal funds solely on the basis of their handicaps. This is plainly stated in 29 U.S.C. § 794 itself. In *Cannon v. University of Chicago*, 441 U.S. 677, 682, 99 S.Ct. 1946, 1949, 60 L.Ed.2d 560 (1979), with reference to implying a private cause of action under Title IX of the Education Amendments of 1972 (20 U.S.C. §§ 1681–1683), the Court stated simply that:

> "the third factor is satisfied, since implication of a private remedy will not frustrate the underlying purposes of the legislative scheme but, instead, will assist in achieving the statutory purpose of providing individual citizens effective protection against discriminatory practices."

In the instant case, there appears to be nothing to indicate that a different conclusion should apply to actions under the Rehabilitation Act. Furthermore, in *Cannon* the Court supported its conclusion by stating that Title IX was patterned after Title VI of the Civil Rights Act of 1964; that fact aided the argument for a private cause of action because such actions have long been maintainable under Title VI. In the instant case, the Rehabilitation Act is now expressly enforceable through the mechanisms by which Title VI is enforced.[6] The analogy that supported allowing a private cause of action in *Cannon* also supports that conclusion here.

The fourth factor to consider is whether a private remedy under a federal statute would infringe upon an area principally governed by state law. The fact that Congress believed itself to be creating "new" rights when it enacted the EAH, as noted earlier,[7] makes it plain that the rights of the handicapped have not traditionally been

a matter of state concern. In sum, it appears that under the *Cort v. Ash* analysis, a cause of action may be implied under the Rehabilitation Act.

■ Having determined that there is an individual cause of action available under the Rehabilitation Act, the question of exhaustion of administrative remedies arises. I find that there is no exhaustion requirement as a precondition to suit under the Act. There is no such requirement in the Act itself, no legislative history has been presented to support such a view, and the regulations under the Act are directed towards the procedures by which public agencies, not private individuals, may enforce the Act. The remedies available under the administrative procedures promulgated under the Act do not offer the private person compensation in any form for violation of the Act. The only administrative remedy is to terminate the federal funding. *See* 45 C.F.R. § 84, *et seq.* These circumstances resemble those presented in *Cannon v. University of Chicago, supra*, where the Court held that it was not necessary to exhaust administrative remedies where, as here, they allow little or no participation by the private individual, and the resulting sanctions might not include relief for the complainant. *Id.; New Mexico Assn. for Retarded Citizens v. State of New Mexico*, 678 F.2d 847 (10th Cir.1982); *Miener v. State of Missouri, supra; Monahan v. Nebraska*, 687 F.2d 1164, 3 EHLR 554:140 (8th Cir.1982); *cf., Turillo v. Tyson*, 535 F.Supp. 577 (D.Rhode Island 1982). Consequently, the instant case may not be dismissed on the basis of failure to exhaust administrative remedies.

■ As an action may be maintained, the court must now determine who may bring suit. In the instant case, Mr. Sanders brings suit on behalf of Louise for the injuries she allegedly sustained while a

---

**6.** Section 794a of the Rehabilitation Act provides:

"(2) the remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any act or failure to act by any recipient of Federal Assistance or Federal provider of such assistance under section 794 of this title."

**7.** See pp. 1367–1368, *supra*.

minor, and, it appears, on his own behalf for the trauma and expenses he suffered as a result of defendants' conduct.

In *Miller v. Abilene Christian University of Dallas,* 517 F.Supp. 437 (N.D.Texas 1981), the court stated the test for standing to sue under the Act. A proper plaintiff is one who is either a participant in a program affected by the Act, or a beneficiary of a program or activity that receives federal assistance. *Id.* at 439. In *Miller,* a former professor charged the Abilene Christian University of Dallas with terminating him in violation of the Rehabilitation Act. The court found that the plaintiff lacked standing because he failed to show that he had been the intended beneficiary of, or a participant in, a program that receives federal assistance. *Miller* is directly analogous to the instant case. Mr. Sanders, like the plaintiff in *Miller,* has not shown that he either was a participant in, or a beneficiary of, a program receiving federal funds. The instant case is also unlike that of *Ross v. Allen,* 515 F.Supp. 972 (S.D.N.Y.1981), where a school psychologist was found to have standing to sue under the Act. In *Ross,* the plaintiff had standing because she administered a program that assisted handicapped students. The *Ross* plaintiff thus qualified as a "participant" in a program subject to the Act, and accordingly had standing to sue under its provisions.

The facts presently before the court indicate that only Louise may be an intended beneficiary of, or participant in a program subject to the Rehabilitation Act. Consequently, I find that Mr. Sanders has standing to sue only on behalf of Louise during her minority, and has no standing to sue under the Act for the purely personal injuries he claims to have sustained from defendants' conduct.

■ It must now be determined whether plaintiffs have alleged the elements of a cause of action under the Act. In general, there are three requisite elements: first, that the defendants receive "Federal financial assistance"; second, that plaintiff is shown to be an "otherwise qualified individual" within the meaning of the Act; and, third, that she was discriminated against on the basis of her handicap. 29 U.S.C. § 794; *also see, New Mexico, supra; Simpson v. Reynolds Metal Co.,* 629 F.2d 1226 (7th Cir. 1980); *McCowen v. Hahn,* 3 EHLR 553:131 (N.D.Ill.1981).

The courts have divided over the proper test to determine whether a defendant receives federal funds within the meaning of the Rehabilitation Act. Some courts require that the very program challenged for inadequacy must have received federal funds. *See, e.g., McCowen v. Hahn, supra.* Other courts find this requirement satisfied when the public educational system, of which the particular defendant is a party, receives federal finances. The recent Supreme Court case of *Pennhurst State School & Hospital v. Halderman, supra,* has been deemed to support the former interpretation.

In *Pennhurst,* the Supreme Court, in dicta, discussed the elements required to maintain a claim under the Developmentally Disabled Assistance and Bill of Rights Act of 1975 (hereinafter "the DDA Act"). The *Pennhurst* plaintiff sought to bring suit under 42 U.S.C. § 1983 to enforce certain provisions of the DDA Act. The Court noted that, although the defendant institution was part of a state program of care for the mentally disabled, because Pennhurst itself did not receive funds under the DDA Act, it was "arguably not a 'program assisted'" within the meaning of the DDA Act.

■ In the instant case, the record does not clearly reflect whether the defendants received federal financial assistance, or whether the particular programs in the schools attended by Louise received federal funding. Because these facts are material, and "disputed," summary disposition on this element is not appropriate. In future, however, the test for receipt of federal funds will be whether or not the educational system as a whole has received federal funding. The Rehabilitation Act does not indicate that a challenged program must itself receive federal funds before the Act applies. Nor does the legislative history mandate the more restrictive test. It must also

be noted, first, that the statement quoted above from *Pennhurst* was dicta that may not become the actual rule when the question is given full consideration and second, that *Pennhurst* did not consider the Rehabilitation Act, but rather the separate and distinct DDA Act.

■ The next necessary element is whether the plaintiff was "otherwise qualified" for the rights claimed under the Act. There are two aspects to this element. First, the plaintiff must show that she "qualified" for special educational treatment because of a handicap.[8] This may be shown by presenting some evidence that, during the time in question, she suffered from some learning disability that could ordinarily have merited special educational treatment. In the case at bar, plaintiffs have alleged as much, and defendants effectively support that assertion by claiming that they sought to test Louise for learning disabilities before she withdrew from the Marquette public school system in 1978. Furthermore, in September of 1981, a special educational planning committee determined that Louise was an "educable mentally impaired individual" as defined in Rule 340.1705 of the Michigan Special Education Rules, as of September 11, 1981, by an individualized educational planning committee. From this fact, it is reasonable to infer that the troubles identified in 1981 existed before that date, and thus during the time in which plaintiff claims to have received an inappropriate education.

The second aspect to showing that Louise was "otherwise qualified" entails showing that the treatment claimed would not have imposed an "undue burden" on the defendants. This requirement follows from *Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979).

In *Davis*, a handicapped person sought entrance in the university nursing program. On denial, she brought suit under the Rehabilitation Act. The Supreme Court held that to present the elements of a claim under the Act, the plaintiff had to show that she was "otherwise qualified" for the position sought, and second, though otherwise qualified, she was denied the position on the basis of her handicap. In determining whether plaintiff was "otherwise qualified," the Court analyzed how much the defendant would be burdened by accommodating the plaintiff. In essence, an individual is not "otherwise qualified" if accommodating the plaintiff would impose an "undue burden" on the defendant. *Id.* at 405–08, 99 S.Ct. at 2366–2368.

I find that the following analysis comports with the letter and the spirit of the Rehabilitation Act, and with the analysis outlined in *Davis*. When a plaintiff shows that the defendants generally provided special educational programs for the handicapped, and after the plaintiff has shown himself to have been handicapped at the time in question, it may logically be inferred that it would not have imposed an "undue burden" on the defendants to provide a special educational program for the plaintiff. Defendants may later come forward with evidence rebutting this inference. Such evidence might be data showing that funding was simply unavailable, or that the program requested by plaintiff could not have been provided without great expense and detriment to the system. *See Davis, supra*. In the instant case, plaintiff has alleged facts sufficient to show that it would not have imposed an "undue burden" on defendants to accommodate her disabilities. Later, defendants may rebut this showing, but the record now before the court shows only that this material question is still in dispute.

■ Plaintiffs have also evidence of the third element of the prima facie case. Plaintiffs claim that Louise was denied the benefit of a funded program, "on account of" her disabilities. Alleging that a proper learning program was or could have been available presents one factor of this element. The element of discrimination or

**8.** *See, e.g., New Mexico Assn. for Retarded Citizens v. State of New Mexico*, 678 F.2d 847 (10th Cir.1982); *Turillo v. Tyson*, 535 F.Supp. 577 (D.R.I.1982); *Dept. of Education, State of Hawaii v. Katherine D.*, 531 F.Supp. 517 (D.Hawaii 1982).

exclusion "on account of" her disability is also presented. In essence, plaintiffs claim that, but for her disabilities, the education Louise received would have been "appropriate" within the meaning of the Act. Her disabilities allegedly made other measures "appropriate." Consequently, defendants' alleged failure properly to assess and accommodate Louise's disabilities denied her the benefit of measures that would have made her education "appropriate." These circumstances seem as clearly within the province of the Act as those presented when a handicapped person seeks access to a program that is not designed to alleviate learning disabilities. *Cf., Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979).

▪ Another issue raised is whether it is necessary to show that defendants discriminated against plaintiff "intentionally." I find nothing in the statute or case law that requires such an element be present. Instead, in accordance with the rule adopted by other courts, the requirements for a cause of action under other doctrines will not be imposed upon the straightforward language of 29 U.S.C. § 794. *New Mexico, supra; Pushkin v. Regents of the University of Colorado, supra.*

▪ The defendants next argue that even if a cause of action exists under the Rehabilitation Act, plaintiffs are not entitled to sue for monetary damages. Courts confronted with this question have reached differing conclusions. For the reasons stated below, I find that Louise may sue for money damages, but that any recovery will be subject to the strictures of the Eleventh Amendment.

The remedies provided under the regulations promulgated to enforce the Act will not provide relief to the aggrieved plaintiff. In fact, the remedy of cutting off federal funds to the defendant may leave the plaintiff in worse straits than before. *See,* 45 C.F.R. § 84. Even injunctive relief will not entirely compensate for the harm suffered from the denial of a "free and appropriate"

education. The Act itself also states that the courts may give "appropriate" relief. 29 U.S.C. § 794. It is also pertinent that Title VI of the Civil Rights Act of 1964, which has been made the enforcement mechanism of the Rehabilitation Act, has been construed by many courts to enable the award of money damages. *See, e.g., Miener v. State of Missouri, supra.*

The restrictions of the Eleventh Amendment on the award of money damages, however, are also applicable. There is no showing that the Act was passed pursuant to Congress' "enforcement power" under section 5 of the Fourteenth Amendment. Consequently, there has been no implied repeal of the immunity otherwise enjoyed by the States. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). There is also nothing in the statute to support a conclusion that, by accepting federal funds, and thereby coming under the strictures of the statute, the states impliedly waived their immunity. The Supreme Court has recently stated that, for such a waiver to be found, the federal government must make the conditions of the "agreement" extremely plain. *Florida Department of Health & Human Rehabilitative Services v. Florida Nursing Home Assn.,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). *Cf., Department of Education, State of Hawaii v. Katherine D.,* 531 F.Supp. 517 (D.Hawaii 1982). No language of waiver, plain or otherwise, is evident in the Act. Consequently, traditional immunity principles apply.[9]

▪ In the instant case, plaintiffs have named as defendants both the Marquette Public School system, and the Michigan Department of Education. For purposes of federal law, an entity such as the city school system is no longer immune from liability, including liability for monetary damages. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), at least where it is shown that the

---

**9.** *Accord, Miener v. State of Missouri,* 673 F.2d 969 (8th Cir.1982).

challenged conduct is pursuant to a pattern or practice. *Id.* The State Board of Education, however, as an entity of the state, still enjoys the traditional immunity from liability for the retroactive award of money damages. *Id.; Miener v. State of Missouri, supra* at 980–81. Consequently, plaintiff may, if liability is established, recover monetary damages only from the defendant public school board; the State Department of Education may be amenable to prospective injunctive measures.

 A remaining issue is whether plaintiff may bring suit for violation of the Rehabilitation Act under 42 U.S.C. § 1983. As noted earlier,[10] the criteria for an action under section 1983 are first, that the federal provision in question provides the plaintiff a "right secured" within the meaning of section 1983, and second, whether the underlying statute provides an "exclusive remedy" for violations.

The considerations that lead to finding that a private cause of action exists under the Rehabilitation Act are substantially similar to those that indicate whether the Act provides a person a federally secured right.[11] Consequently, I find that the Rehabilitation Act does secure Louise a right within the meaning of section 1983. Similarly, the reasons for finding that Mr. Sanders did not have a cause of action directly under the Act [12] also show that he does not have a federally secured right actionable under section 1983.

Furthermore, it appears that the Rehabilitation Act (unlike the EAH) was not intended to be the "exclusive means" of vindicating the rights provided by the Act. There is a private cause of action under the Act. The Act, unlike the EAH, does not provide a detailed administrative scheme by which the plaintiff's individual rights may be asserted; the statute does appear also to protect "new" rights of the handicapped, but the Act does, through judicial interpretation, provide a damage remedy. In sum, where the factors do not conclusively show

that the federal statute in question was intended to provide the exclusive means of asserting and protecting the rights secured by the statute, it is proper to apply the more general rule of *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), and allow an action under section 1983, rather than search for a basis to preclude such an action under the dicta of *Pennhurst State School & Hospital v. Halderman, supra,* and the dissent in *Thiboutot.* For these reasons, suit may be brought to vindicate the rights established by the Rehabilitation Act under 42 U.S.C. § 1983.

## III. CLAIMS UNDER STATE TORT LAW

Plaintiffs have alleged that defendant Marquette Schools negligently failed to provide Louise with a free and appropriate education. For reasons stated below, this allegation is dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12.

 It is now well settled in Michigan law that the operation of a public school is a governmental function. *Belmont v. Forest Hills Public Schools,* 114 Mich.App. 692, 319 N.W.2d 386 (1982); *also see, Bush v. Oscoda Area Schools,* 405 Mich. 716, 275 N.W.2d 268 (1979); *Lockaby v. Wayne County,* 406 Mich. 65, 276 N.W.2d 1 (1979). This brings the operation of a school under the protection of the state's governmental immunity statute, M.C.L.A. § 691.1407, M.S.A. § 3.996(107). Consequently, the claim against the defendant school system for negligence must be dismissed, where, as here, none of the statutory exceptions are applicable. *Id.; 1981 Annual Survey of Michigan Law,* 28 Wayne Law Review 999 (1982).

## CONCLUSION

Plaintiff Louise Sanders is deemed to have a cause of action under the EAH for review of the propriety of the 1981 place-

---

**10.** See pp. 1367–1368, *supra.*

**11.** See pp. 1369–1370, *supra.*

**12.** *Id.*

**1374**

ment decision only. Plaintiff Mr. Sanders is found to have no cause of action under either EAH or the Rehabilitation Act. Louise also has a cause of action under the Rehabilitation Act, for which, if merited, monetary damages as well as injunctive relief may be awarded. Louise may also bring suit for the alleged violation of her rights under the Rehabilitation Act only, and under 42 U.S.C. § 1983. Plaintiffs' claim alleging negligence is dismissed for failure to state a claim upon which relief can be granted.